## Glendenning *v.* Sprowls, Appellant.

Argued September 25, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*James M. Marsh,* with him *August L. Sismondo,* and *LaBrum & Doak,* for appellant.

*Sanford S. Finder,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 14, 1961:

This was a trespass action for personal injuries; the facts concerning the accident are, on this appeal, unimportant. The jury found defendant guilty of negligence and awarded plaintiff a verdict of $18,000. Defendant appealed from the judgment which was entered on the verdict and asks a new trial on the grounds (1) that the verdict was excessive, and (2) that the trial Judge was guilty of misconduct. We shall consider only the second contention.

It is admitted by all parties that while the jury was deliberating, the trial Judge, without the knowledge of either counsel, (a) visited the jury room six times, and (b) allowed a juror to leave the jury room in the company of the Judge and telephone the juror's wife. The trial Judge subsequently filed a statement in open Court in which he explained the purposes for which he went into the jury room and what occurred there: (1) to provide the jurors with a pitcher of water; (2) to arrange for a ride home for a juror; (3) to tell the jury to refrain from arguing too loudly because they might be overheard; (4) to allow a juror to leave the jury room and telephone his jealous wife in the presence of the Judge; and (5) telling a juror that it was none of the jury's business when a juror asked him if insurance had anything to do with the case. Appellant objected to the Court's actions after he learned of them, and when appellant sought to discover exactly what occurred in the jury room, appellant's counsel was en-

joined from interviewing the jurors and was threatened with contempt proceedings if he did so.

The trial Judge saw nothing wrong with his conduct and declared that he would continue the practice until ordered to abandon it.

It has been wisely stated that "Next to the tribunal being in fact impartial is the importance of its appearing so": *Shrager v. Basil Dighton Ltd.*, (1924) 1 K.B. 274, 284. This applies in a special way to the Judge and his relationship with the jury. Without doubting the worthy motives or the well-intentioned solicitude of the Judge for the wishes and welfare of the jurors, private communication by a Judge to or with the jury in the jury room and in the absence of counsel is almost certain to create suspicions and a belief of unfairness in the minds of many people. It opens wide the door to possible fraud and to unintentional or possibly intentional influence of a jury and thus impairs confidence in the Court: *Sommer v. Huber,* 183 Pa. 162, 167 (1897), 38 A. 595.

The reasons are obvious. In many cases no one can say with certainty that a litigant's case has or has not been adversely affected by an intrusion of a Judge into the secrecy of the jury room, even though the intrusion was worthily motivated. This Court has, on prior occasions, warned trial Judges that they are not to enter the jury room or privately communicate with the jury under any circumstances, no matter how innocent or worthy the purpose may be: *Hunsicker v. Waidelich,* 302 Pa. 224, 232 (1931), 153 A. 335; *Sommer v. Huber,* 183 Pa., supra. In *Hunsicker v. Waidelich,* which is relied upon by the lower Court and by the appellee, this Court said (page 232) : "We accept the statement of the trial judge that he meant no harm or interference with the province of the jury, and, as no instructions were given nor the questions involved discussed in any manner, we have concluded that, *in view*

*of all the circumstances, the nature of the defense, and the evidence produced,** the error of the trial judge was not one which calls for reversal. *We cannot, however, express too forcibly our disapproval of his action in invading the secrecy of the jury room.** Instructions to the jury must be given in open court in the presence of the parties or their counsel. There may be no private communication of any kind or character between the judge and the jury, and if additional instructions are needed they must be given in open court. The trial judge should not, under any circumstances, enter the jury room, however innocent and proper the purpose may be: Sommer v. Huber, 183 Pa. 162, 164-5. There is no way of determining the influence which such act might have on the minds of the jury, and the only safe course is to avoid all questions by strictly adhering to the long established practice which requires all deliberations by the jury to be conducted in the utmost privacy."

Confidence in the impartiality and integrity of a jury's verdict and the secrecy of its deliberations in a closed jury room are far more important than a juror's glass of water or ride home, or any other comforts or conveniences of a jury. Moreover, the Judge or a court officer could and should, if deemed necessary or advisable, have 'phoned the juror's wife to explain his delay. The Judge did not hear what reply the juror's wife made to her husband, nor could he possibly tell whether there was a secret code between them.

Appellee contends that no prejudice or harm was shown in this case, even though the appellant was prevented by the trial Judge from interviewing the jurors to ascertain their recollection and interpretation of what had occurred. For this contention appellee relies upon *Hunsicker v. Waidelich*, supra.

---

* Italics, ours.

The *Hunsicker* case is distinguishable on two grounds, first, in that case the Judge made only one visit to the jury room and it was conceded that nothing prejudicial was said by him. In the instant case the Judge went into the jury room at least six times. Secondly, in the instant case, counsel was given no opportunity to discover from the jury what, if any, influence the trial Judge had unwittingly and innocently exercised. Furthermore, in the *Hunsicker* case, this Court warned trial Judges that such practice would no longer be tolerated.

We cannot safely leave a Judge's intrusion into a jury room to a consideration of his motives, or the language of a Judge's private communication to the memory or to the subsequent recollection or interpretation of the trial Judge and a possibly different recollection or interpretation thereof by jurors. We strongly condemn any intrusion by a Judge into the jury room during the jury's deliberations, or any communication by a Judge with the jury without prior notice to counsel, and such practice must be immediately stopped!

Judgment reversed and new trial granted.