459 A.2d 733

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William BRADLEY, Appellee.**

Supreme Court of Pennsylvania.

Submitted Jan. 27, 1983.

Decided April 28, 1983.

Eric B. Henson, Deputy Dist. Atty., Jane Cutler Greenspan, Philadelphia, for appellant.

John W. Packel, Chief, Appeals Div., Jeffrey Shender, Philadelphia, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice:

■ This is the Commonwealth's appeal by allowance from an order of Superior Court vacating Philadelphia Common Pleas' judgment of sentence and granting a new trial after a jury found appellee guilty of rape, robbery and involuntary deviate sexual intercourse. Superior Court acted because it felt "[t]he Supreme Court of Pennsylvania has strictly prohibited *communication* between the judge and jury other than in open court and in the presence of counsel for all parties." (Emphasis supplied). Reviewing our holdings on this issue convinces us we must reconsider the prophylactic rule broadly stated in the civil cases which Superior Court

relied on and reconcile them with our line of criminal cases requiring prejudice.

We, therefore, reverse Superior Court, 272 Pa.Super. 370, 415 A.2d 1243, disapproving the broad language in our civil cases requiring reversal without prejudice, and hold that only those *ex parte* communications between a court and jury which are likely to prejudice a party will require reversal. In this connection we note that instructions on the law or its application to the facts often create a high risk of prejudice, as opposed to incidental communications such as the one involved here. Furthermore, we see no reason to apply different rules in civil and criminal cases.

The issue before us arose from a stipulation between the Commonwealth and defendant with respect to the testimony of the custodian of records for Jefferson Hospital, where the rape victim had been treated. The trial court correctly instructed the jury as to the effect of the stipulation, and the assistant district attorney then entered the stipulation into the record before the jury:

[Assistant District Attorney]: She [the custodian of records] would testify, your Honor, that the records of Jefferson Hospital, of Philadelphia, reflect that the complaining witness, Nina Rothschild, was treated there at about three o'clock in the afternoon, on 1–13–77, for an alleged rape, and was released later in the day to the police.

Record at 138–39a. This evidence was introduced to corroborate Miss Rothschild's testimony that she had promptly reported the rape and was then taken to the hospital.

During its deliberations, a court officer received an inquiry from the jury which read: "May we see or hear the hospital report on Nina Rothschild." Upon being advised of this note, the trial judge instructed the court officer to tell the jury that the hospital report had been put in by stipulation, and to continue their deliberations. Neither the defense nor the prosecution were notified of these communications until after the verdict had been recorded. The court promptly recorded the present communication as follows:

Let the record show that the court officer received the following inquiry from the jury during their deliberations, "May we see or hear the hospital report on Nina Rothschild." Upon being advised of this memorandum, the court advised the court officer to instruct the jury that the hospital report had been put in by stipulation, and to continue their deliberations.

Record at 271a.

In reaching its conclusion that all *ex parte* communications between the court and jury require a new trial, the Superior Court extended to criminal cases already overbroad language from a series of civil cases, *Sommer v. Huber,* 183 Pa. 162, 38 A. 595 (1893); *Glendenning v. Sprowls,* 405 Pa. 222, 174 A.2d 865 (1961); *Gould v. Argiro,* 422 Pa. 433, 220 A.2d 654 (1966); *Kersey Manufacturing Co. v. Rozic,* 422 Pa. 564, 222 A.2d 713 (1966); *Yarsunas v. Boros,* 423 Pa. 364, 223 A.2d 696 (1966) and *Argo v. Goodstein,* 424 Pa. 612, 228 A.2d 195 (1967). By so doing, it provided a self-confessed perpetrator of rape, robbery and involuntary deviate sexual intercourse with a new trial. We have not previously applied such a strict prophylactic rule in criminal cases, although it would be difficult to understand why a criminal defendant should receive less protection than civil litigants.

An analysis of the facts and holdings in the civil cases relied on below demonstrates the initial wisdom of their results, followed by a creeping extension of their initial rationale to a point where its conflict with the competing rationale in the criminal field plainly shows the need for a reversal of that extension. In *Sommer v. Huber,* the jury had sent two written requests to the trial judge for instructions concerning the legal rights of the litigants and the issues between them. To one of these requests the trial judge gave a written response which was not preserved or placed in the record. The parties were not advised of the communications until some time after the verdict was rendered and the jury discharged. This Court reversed the judgment, properly condemning "secret instructions to the

jury in relation to questions raised by the pleadings or the evidence." *Id.* 183 Pa. at 167, 38 A. at 597.

In *Glendenning v. Sprowls,* the trial judge outrageously visited the jury room six times during deliberations and allowed a juror to leave the jury room in the judge's company in order to telephone the juror's wife. Although the trial judge subsequently filed a statement in open court explaining the purposes of his actions, he prevented the defendant from interviewing the jurors to ascertain their recollection and interpretation of what had occurred. Accordingly, we reversed this judgment, commenting in the words of Chief Justice Bell: "We strongly condemn any intrusion by a Judge into the jury room during the jury's deliberations, or any communication by a Judge with the jury without prior notice to counsel, and such practice must be immediately stopped!" *Id.* 405 Pa. at 226, 174 A.2d at 867.

In *Gould v. Argiro,* seizing on Chief Justice Bell's use of the word "communication," Justice Cohen, writing for the majority, extended *Glendenning* to private communications without regard to prejudice, saying:

Although we have in the past held that to warrant a new trial prejudice must arise from the trial court's instruction in the absence of counsel, *Sebastianelli v. Prudential Insurance Company of America,* 337 Pa. 466, 12 A.2d 113 (1940), we have more recently said: . . . This court has . . . . warned trial judges that they are not to enter the jury room or *privately communicate with the jury* under any circumstances . . . ." (Emphasis supplied). *Glendenning v. Sprowls, supra* 405 Pa. at 224, 174 A.2d 865.

*Gould v. Argiro,* 422 Pa. at 435, 220 A.2d at 655. In *Gould v. Argiro,* the jury had requested two further instructions from the trial court:

1. "Since this was a dual transmission truck, what gear was it in as it approached the top of the hill?" 2. "What is the top union wage for welders?"

30

To each of these questions the judge indicated that he gave the following answer: "You must remember the testimony as given by the witnesses on the witness stand." *Id.* 422 Pa. at 434, 220 A.2d at 655. However, the trial judge did not place his communications on the record and our grant of a new trial was also based on this ground.

Justice Musmanno dissented, pointing out that

"counsel for both sides appeared in the courtroom while the jury was still deliberating, and they were informed about the questions submitted by the jury and the answers advanced by the judge. Neither counsel objected to this procedure, neither counsel asked the court to amplify what the judge had said to the jury, and neither counsel excepted in the slightest to what had been done."

*Id.* 422 Pa. at 437–438, 220 A.2d at 657.

A few months later, a further extension occurred in *Kersey v. Rozic.* There, this Court rejected:

The distinction drawn in the court below between "additional instructions" and other communications and its conclusion that in the case at bar the jury was not requesting "additional instructions" is of no moment. The vice lies in *any* form of communication between court and jury other than in open court and counsels' presence.

*Id.* 422 Pa. at 570 n. 6, 222 A.2d at 715. (Emphasis in original). In *Kersey v. Rozic,* the jury had deliberated for more than two hours when the trial judge, who was at dinner, received a call from the court crier advising the judge that the jury had sent him a note reading "We have taken quite a few ballots and just cannot agree. We all feel that both parties are at fault and each should share the loss. If you have suggestions, please advise. [Signed by the foreman]." The trial judge instructed the crier to return the note to the jury with the following language written at the bottom: "Continue your deliberations. Review the evidence and come to a decision to the Best of your Judgment." Neither attorney was notified or present when the jury's request was received or the instructions given. Defense counsel did not learn of the incident until the day after the

verdict was received and the note was not incorporated into the record until about five months after the verdict. Once again, we based our opinion on both the judge's *ex parte* communication with the jury and his failure to promptly record the details of the incident. Chief Justice Bell, who first used the broad language condemning "any communication by a judge with the jury without prior notice to counsel" in *Glendenning v. Sprowls*,[1] dissented in *Kersey v. Rozic* on the basis that the communication to the jury was not an instruction "as that term is used and understood, and was merely a harmless error." *Id.* 422 Pa. at 573, 222 A.2d at 716. Mr. Justice (now Chief Justice) Roberts concurred in the result but objected to the broad adoption of a prophylactic rule.

Mr. Chief Justice Roberts reemphasized this position by citing *Kersey v. Rozic* in his dissent in *Yarsunas v. Boros,* decided a few weeks later in 1966:

> The reason for prohibiting a trial judge from communicating with a jury ex parte is to prevent the court from unduly influencing the jury and to afford counsel an opportunity to become aware and to seek to correct any error which might occur. Where there is no showing either that the court's actions may have influenced the jury or that its directions were erroneous, then the reason for the rule dissolves. *Kersey Mfg. Co. v. Rozic, supra* [422 Pa.] at 572, 222 A.2d at 716.

*Yarsunas v. Boros,* 423 Pa. at 366–367, 223 A.2d at 698. In this case, the jurors had sent a written memorandum to the trial judge asking: "Are these attorneys from insurance companys or are they personal attorneys? If these are personal contingency lawyers should we take attorney's fee into consideration?" To which the court responded on the same sheet of paper: "Mr. Dunton and Mr. Lancaster represented their clients, and you are to consider only those matters that I discussed in my charge to you." *Id.* 423 Pa. at 366, 223 A.2d 697. After the jury verdict, the court informed counsel of the jury's inquiry and directed that the

1. *Supra* p. 735.

memorandum containing the questions and answers be made part of the record. The majority in *Yarsunas* chose to express itself in the following broad language:

> [t]he inherent possible harm of permitting trial courts to communicate with jurors during deliberations in the absence of counsel is so readily manifest that discussion thereof is unnecessary.... Further, past experience dictates that guidelines for trial judges, in this respect, be fixed and clear in order that all possible prejudice to litigants' causes be completely eliminated.

*Id.* 423 Pa. at 366, 223 A.2d at 697.

The culmination of these extensions took place in *Argo v. Goodstein,* decided in March of 1967, where we said:

> The law in this Commonwealth is clear. Any intercourse between the trial judge and deliberating jury, *no matter how innocuous,* had in the absence of counsel mandates the grant of a new trial even in the absence of prejudice to either party.

*Id.* 424 Pa. at 615, 228 A.2d at 196. Justice Musmanno dissented, accurately noting that this statement requires a new trial whenever a trial judge conveys even so simple a message as the appointed hour for serving the jurors' midday meal. Chief Justice Bell, also dissenting, explicitly distinguished the facts in this action from those which produced his opinion in *Glendenning v. Sprowls* emphasizing that:

> Statements by a Judge to a jury in the absence of counsel, and in answer to a jury's request, do not constitute reversible error or justify a new trial, unless the communication from the Judge amounted to an instruction to the jury, as that term has always been used and understood, and constituted prejudice to one or both of the parties.

*Argo v. Goodstein,* 424 Pa. at 617, 228 A.2d at 203.

Our examination of the same issues in criminal cases has led to a different result, requiring a criminal defendant to show prejudice. In *Commonwealth v. Milliner,* 442 Pa. 537, 276 A.2d 520 (1971), like the present case a jury trial on a charge of rape, the jury foreman asked the court crier

whether the defendant had made a statement at the time of his arrest. The crier later reported to the court that he had replied "I don't know and even if I did I couldn't tell you." The crier said that he had asked the foreman whether the jury wanted further instructions and was told they did not. Later, as deliberations continued, the foreman again inquired of the crier whether defendant had made a statement. The crier again avoided any answer to the question, but, when the jurors indicated that they had a problem, reported the two inquiries to the trial judge so that he might respond to the jury's request for a meeting at which they could seek further instructions. Before such a meeting occurred, the jury reached agreement on a verdict. Both attorneys had been apprised of the request for further instructions and at defense counsel's request a post-trial hearing was held to receive the testimony of the court crier and his assistant. A request by defense counsel that the jurors be questioned was denied. On appeal, we affirmed and Justice (later Chief Justice) O'Brien's lead opinion noted that:

> The court crier's remark to the jury that he could tell them nothing about the case was correct and not harmful to appellant, quite unlike the clearly prejudicial remarks made by a bailiff in *Parker v. Gladden,* 385 U.S. 363 [87 S.Ct. 468, 17 L.Ed.2d 420] (1966), upon which appellant relies. Moreover, appellant's counsel was fully informed about the conversation between the jury foreman and the court crier before the verdict was recorded. He made no objection nor did he request that the jurors be questioned at that time. We have frequently stated that in the absence of fundamental error, a party may not sit idly by, taking his chances on a verdict, only to appeal if the verdict is adverse.

*Commonwealth v. Milliner,* 442 Pa. at 541, 276 A.2d at 522. In his dissent, Mr. Chief Justice Roberts pointed to the discrepancy between this opinion and those in the preceding civil cases, adding:

There is certainly no justification for our being any less scrupulous in insulating a criminal jury from any improper outside influence, and while I remain unpersuaded as to the wisdom of the prophylactic rule, if a majority of this Court is to apply that rule in civil trials it should likewise be applied in criminal trials where liberty or even life itself is at stake.

*Id.* 442 Pa. at 542, 276 A.2d at 523.

This Court addressed the same issues once again in *Commonwealth v. Bamber*, 463 Pa. 216, 344 A.2d 799 (1975), in which case the trial judge had received the following written message from the jury: "At 5:00 p.m., on October 2, 1973, we, the jury, feel that we are hopelessly deadlocked and unable to reach a verdict. Respectfully, Kenneth Adams, Foreman." The court instructed the jury constable to inform the jury that the message had been received and that they should continue their work. Later on the same evening, the court informed counsel of the jury communication. Defense counsel did not object, but called to the court's attention that a communication, no matter how innocuous, can be grounds for a new trial. Distinguishing the factual situation in *Glendenning v. Sprowls*,[2] where the trial judge had visited the jury room on six separate occasions during its deliberations, we concluded in *Commonwealth v. Bamber* that the principles of *Argo v. Goodstein* and *Glendenning v. Sprowls* were inapplicable.

The trial judge in this case acknowledged through the jury constable that he had received the jury's message, and told the jury to continue working. We are unable to consider this an intrusion into the jury's deliberations in any way. Under the circumstances of this case, we find no reversible error.

*Bamber*, 463 Pa. at 224, 344 A.2d at 803.

Finally, in *Commonwealth v. Richardson*, 476 Pa. 571, 383 A.2d 510 (1978), *cert. denied Richardson v. Pennsylvania*, 436 U.S. 910, 98 S.Ct. 2248, 56 L.Ed.2d 410 (1978), we declined to declare a mistrial because of an alleged improper contact

2. *Supra* p. 735.

between the trial judge and several of the jurors during voir dire but before the entire jury was impaneled and sworn. On the day after the incident, the court made the following record:

"Gentlemen, we will note the presence of the defendant in Court, and I want to put on the record what I told counsel in Chambers when I called them a few moments ago, and that is this. Last night when we recessed, there was to be a bus to transport the jurors from here to, that is the jurors that had been selected, from here to the Holiday Inn in New Hope for their lodging. The Court Administrator apparently had over-looked, or forgotten it, so he informed me, and subsequently there was no bus. Mrs. Slater, one of the tipstaffs, who had the jurors in charge had her car available. The Court Administrator was still here, but I attempted to have some of the courthouse personnel who might have cars available transport them, so that the jurors would remain in the presence of either Mrs. Slater or Mr. Young, the other tipstaff who has them in charge. I couldn't arrange such transportation through the courthouse personnel. Frankly, I forgot that Doylestown had a Taxi Service, it didn't occur to me to engage Taxis to make the Transportation. Mrs. Slater, accordingly volunteered she drive some of them in her car, and Mr. Kester, who was here, although he had forgotten what he was supposed to do, volunteered he would drive some in his car. Mrs. Slater, I don't know how many she had with her. Mr. Young accompanied Mr. Kester in his car, and I drove three unaccompanied by any tipstaff. On the way from here to New Hope, Mr. Dwelley, who was seated beside me, asked me if I thought the case would be completed by October 22nd, saying that he did not recall Counsel telling them how long the case would be likely to last, and saying that he was expecting a visit from a friend or relative from Liverpool, England, on the 22nd of October. I told him that counsel had mentioned they anticipated a week being spent on the trial approximately, and that therefore, I would assume that the trial would be completed within a week or ten days; as counsel's esti-

mate in the past very generally have been fairly accurate. And, consequently, I would rely on the statements made. That was the extent of any discussion concerning this case. *I would be glad if counsel wishes to interrogate any of the three jurors to have them brought back for interrogation ...*"

*Id.* 476 Pa. at 577–578, 383 A.2d at 513 (emphasis added in *Commonwealth v. Richardson*). Defense counsel declined to examine jurors but immediately moved for the withdrawal of a juror. That request was denied. In writing an opinion for three of six participating members of the Court Mr. Justice Nix found:

The fact that the instant contact was unquestionably apart from the actual trial process renders the foregoing authority[3] inapplicable.... We are satisfied that the instant claim falls within the class of cases wherein a motion to declare a mistrial merely because there was an *opportunity* to influence a juror is deemed within the sound discretion of the trial judge. *Commonwealth v. Truitt,* 369 Pa. 72, 85 A.2d 425 (1951).

*Commonwealth v. Richardson,* 476 Pa. at 580 and 583, 383 A.2d at 514 and 516 (emphasis in original). Mr. Chief Justice Roberts concurred because he found "no reasonable possibility that the contact between the trial judge and jury could have prejudiced appellant," *Id.* 476 Pa. at 589, 383 A.2d at 519, reaffirming the position he had taken in *Kersey v. Rozic, Yarsunas v. Boros,* and *Argo v. Goodstein.* Likewise, in this case we see no reasonable possibility of prejudice.

Obviously the separate rules which have grown up in the civil and criminal fields are irreconcilable. Agreeing with Mr. Chief Justice Roberts' criticism of the prophylactic civil rule prohibiting any communication, we are persuaded that the rationale set forth in the criminal cases represents the sounder view. We therefore expressly overrule *Argo v. Goodstein,* adopt a rule requiring reasonable likelihood of prejudice and direct its uniform application to all jury litigation. In so doing we are mindful of Mr. Justice Nix's

---

**3.** *Argo, Yarsunas, Kersey, Gould* and *Sommer, supra* p. 734.

language in *Richardson.* "It would be jurisprudentially unsound to endorse a rule of law proscribing every circumstance, whether deliberately contrived or not, which provided an opportunity for an untoward influence to be exercised, without the necessity of establishing that there was, in fact, prejudice resulting from the event." Moreover, we are persuaded both by the dissenting opinion of former Chief Justice Bell, equating his own interdiction of "any communication by a judge with the jury without prior notice to counsel" in *Glendenning v. Sprowls* with the traditional prohibition against instructions on the law in the absence of counsel,[4] and the dissents of Mr. Chief Justice Roberts,[5] regularly reiterating objections to the fruitless rigidity of a prophylactic rule in these cases. We especially agree with Mr. Chief Justice Roberts on the need for a consistent treatment of these issues in criminal and civil cases.[6] We, therefore, now explicitly overrule our decision in *Argo v. Goodstein* and adopt the reasoning of Mr. Chief Justice Roberts' dissent in *Yarsunas v. Boros:* [7]

> The reason for prohibiting a trial judge from communicating with a jury ex parte is to prevent the court from unduly influencing the jury and to afford counsel an opportunity to become aware and to seek to correct any error which might occur. *Where there is no showing either that the court's action may have influenced the jury or that its directions were erroneous, then the reason for the rule dissolves." Kersey Mfg. Co. v. Rozic, supra* [422 Pa.] at 572, 222 A.2d at 716.

*Yarsunas v. Boros,* 423 Pa. at 368, 223 A.2d at 698 (emphasis added).

We do, however, remind the trial bench that failure to maintain an accurate and reviewable contemporaneous record of all instructions and communications between the

**4.** *Supra* pp. 736 and 737.

**5.** *Supra* pp. 736 and 737.

**6.** *Supra* p. 737.

**7.** *Supra* p. 736.

38

court and a jury may force an implication of prejudice where arguably none exists.

 Although Common Pleas has correctly noted in its opinion that the hospital "record," not the hospital "report," was admitted into evidence, its response to the jurors [8] added nothing to the instructions previously given in open court. Appellant has shown no reasonable likelihood of prejudice from the court's advising the jurors to continue their deliberations. We therefore reverse the Superior Court and affirm the judgment of sentence of the Philadelphia Court of Common Pleas.