500 A.2d 1191

**COMMONWEALTH of Pennsylvania**

v.

**Walter M. JONES, Appellant.**

Superior Court of Pennsylvania.

Argued May 13, 1985.

Filed Nov. 15, 1985.

546

Charles F. Gilchrest, Sharon, for appellant.

Charles S. Hersh, Assistant District Attorney, Hermitage, for Com., appellee.

Before SPAETH, President Judge, and ROWLEY and WIEAND, JJ.

SPAETH, President Judge:

This is an appeal from judgment of sentence for driving under the influence of alcohol.[1] Appellant argues that he is entitled to a new trial, for two reasons. During its deliberations the jury returned to the courtroom to ask the court a question. While there, the jury heard testimony in an unrelated trial. Appellant argues that there is a reasonable likelihood that he was prejudiced by this testimony. He also argues that the result of the breathalyzer test was improperly admitted. We affirm.

The Commonwealth presented the testimony of Police Officers Ronald Wiernicki and Gregory J. Sterling of the Township of Hermitage. Both testified that appellant's car was swerving or drifting back and forth in its own lane, that it crossed the center line at one point and straddled the center line at another, that appellant was unable to pass the field sobriety tests, and that in their opinion appellant was intoxicated. Officer Sterling presented a videotape of appellant performing the same sobriety tests at the police station. He also testified that appellant submitted to a breathalyzer test, which he conducted. The test disclosed that appellant's blood alcohol content was .15 percent alcohol. Appellant and his wife, who had been a passenger in the car, testified that appellant had driven properly and had passed the field sobriety tests. They also testified that the officer did not demonstrate how the tests were to be performed. After the jury began its deliberations, it returned to the courtroom to ask the court a question. *See* N.T. 1/12/83, 26.[2] Another trial for driving under the influence

1. Act of June 17, 1976, Pub.L. 162, No. 81, § 1, 75 Pa.C.S. § 3731. This provision was amended by Act of Dec. 15, 1982, Pub.L. 1268, No. 289, § 9, effective in 30 days, but the amendment is inapplicable for the offense here was on August 7, 1982.

2. The question was, "Are we to decide whether Mr. Jones was driving under the influence of alcohol *or* that he was driving *unsafely* because he was under the influence of alcohol?"

of alcohol was in progress, and the arresting officer was testifying. When the jury entered the courtroom, the last few questions were being asked on cross-examination. The jury then heard the officer's redirect testimony, which included the following:

Q. Now, Mr. Bogaty [defense counsel] questioned you in some great detail as to your report and we covered certain areas of it. Do you have your report in front of you, officer? I'm referring to the page where you describe breath, attitude, unusual actions, speech and performance.

A. [by Officer Tod Douglas Reiser] Yes sir.

Q. I believe you testified in response to Mr. Bogaty's questions that as to breath you checked or made an X as to moderate; unusual actions, there was no check; and performance there was nothing. Is that your testimony?

A. Yes, that was my testimony.

Q. As to the category of attitude, were there any checks on that section of your report?

A. Yes sir.

Q. What did you check on that section?

A. I checked talkative, profane, insulting.

Q. As to the section marked speech, what sections or what blocks did you check, or X-ed, if any?

A. Mumbled, slurred speech and thick tongue.

Q. Further down below under those sections in observer's opinion, effects of alcohol, did you check any blocks?

A. Yes, I did.

Q. And what did you check on that line?

A. Obvious.

Q. Mr. Bogaty also questioned you regarding your report and I believe you gave a definition of a police report. What again is your understanding of what a police report should reflect?

A.  A police report should reflect as much as possible a summary of the events that took place.

Q.  Have you ever been trained to write down absolutely everything you observe or do regarding an incident?

A.  No sir, we were trained that every single detail does not have to be included in a report.

Q.  And have you followed that training since you've been an officer?

A.  Yes sir, I have.

N.T. 1/12/83, 27–28.

At the conclusion of the officer's redirect testimony, the court turned its attention to the jury's question. After the court had answered the question, appellant made a motion for a mistrial. N.T. 1/12/83, 32–33. The court denied the motion.

■  While it was not good practice to bring the jury into a courtroom where a trial was in progress, especially another trial for driving under the influence, we do not believe that the fact that the jury heard some of the testimony in that other trial is by itself sufficient reason to grant appellant a new trial. Appellant maintains, however, that he is entitled to a new trial because there is a "reasonable likelihood" that he was prejudiced by the other officer's testimony in that other trial that "[a] police report should reflect as much as possible a summary of the events that took place ... [and] that every single detail does not have to be included in a report." *Id.*, 28.[3] In this regard, appellant cites *Commonwealth v. Bradley*, 501 Pa. 25, 459 A.2d 733 (1983), where the Supreme Court "h[e]ld that only those *ex parte* communications between a court and jury which are likely to prejudice a party will require reversal." *Id.*, 501 Pa. at 27, 459 A.2d at 734. Assuming that this is

---

**3.**  Appellant also argues that there is a reasonable likelihood that the jury may have concluded from the officer's testimony that the police only arrest those "extremely intoxicated or under the influence and [      ] severely incapable of safe driving." Brief for Appellant at 16. The record does not support this deduction. N.T. 1/12/83, 30–31.

the correct standard to apply, we find no error in the court's denial of the motion for a mistrial.

At appellant's trial, Officer Sterling was asked on cross-examination about three omissions from the description of the incident in his report, as compared with the description he gave on his direct examination: "that the traffic light was green when Mr. Jones [appellant] got to a street intersection at which he made a right turn ...; that the police officer had demonstrated the field sobriety tests to Mr. Jones at the scene of the arrest before asking Mr. Jones to perform them ...; and that Mr. Jones was talking to himself as Sterling transported him from Hermitage to Farrel for the breathalyzer test...." Brief for Appellant at 9. *See* N.T. $\frac{1}{10}$, $\frac{11}{83}$, 40, 50–51, 81, 140–41, 143–44. Counsel then argued to the jury that because of these omissions, it should not accept the officer's testimony. The gist of appellant's argument now is that this attempt to impeach the officer was undone when the jury overheard the testimony by the officer in the unrelated trial that police reports do not include "every single detail."

■ We are not persuaded by this argument. The issue before the jury was whether appellant was driving under the influence of alcohol so as to render him incapable of driving safely. Indeed, as already noted,[4] the jury returned to the courtroom to clarify this issue. N.T. 1/12/83, 31–32. Whether the light was red or green when appellant turned at the intersection was collateral to this issue, and so was whether the officer demonstrated how the sobriety tests were to be performed, for appellant did not testify that his performance was affected by a lack of such instruction. Finally, whether appellant talked, as well as "mumbled", as noted by the officer in his report, is, if an inconsistency at all, so slight a one as to be insignificant. The evidence presented at the trial included the testimony of two police officers who observed appellant's driving and saw him perform the sobriety tests, a videotape of appellant performing those tests at the police station, and the results of

4. *See* note 2, *supra.*

a breathalyzer test. We find no reasonable likelihood of prejudice from the jury's overhearing the other police officer's testimony.

■ Appellant also argues that the results of the breathalyzer test should not have been admitted because the Commonwealth failed to prove that the machine "was working accurately, properly and reliably." Brief for Appellant at 18. Specifically, appellant maintains that there was no proof that a simulator test was conducted immediately after the test of appellant's breath; that the ampoules were properly prepared; and that the device used had been periodically tested or calibrated for accuracy. *Id.* at 18–19. We find that the trial court's opinion adequately disposes of this issue. Slip op. of tr. ct. at 11–17.

Affirmed.