J-A27028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP ARTHUR SAILOR | : | |
| | : | |
| Appellant | : | No. 83 MDA 2024 |

Appeal from the PCRA Order Entered December 29, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000724-2015

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:     **FILED: APRIL 3, 2025**

Philip Arthur Sailor appeals from the order dismissing his Post Conviction Relief Act petition. **See** 42 Pa.C.S.A. §§ 9541-46. He claims that trial and direct appeal counsel were ineffective. We affirm.

The trial court set forth the following factual history:

> At dusk on November 21, 2014, Sailor was driving his vehicle at approximately 50-53 miles per hour in a 35 mile per hour zone on Northway Road when he struck a pedestrian who was crossing Northway Road. The pedestrian was seriously injured. The pedestrian was wearing dark clothing. Sailor stayed with the pedestrian until medical personnel and law enforcement arrived.
>
> Trooper Douglas Hoffman investigated the incident and spoke to Sailor at the scene. Trooper Hoffman noticed a strong odor of burnt marijuana as he approached the rear of Sailor's vehicle. He also observed that Sailor seemed impaired. He noticed that Sailor had bloodshot eyes and that Sailor was sluggish and lethargic. Trooper Hoffman asked Sailor to perform field sobriety tests, which Sailor did and he showed clues of imbalance. Sailor told Trooper Hoffman

that he was traveling at 35 miles per hour and struck the pedestrian who was crossing Northway Road from right to left. Trooper Hoffman determined, however, that the pedestrian was crossing Northway Road from left to right. Based on his observations, Trooper Hoffman concluded that Sailor was driving his vehicle while he was incapable of safely driving due to ingestion of marijuana.

Trooper Hoffman asked Sailor for consent to search his vehicle. Sailor agreed and signed a consent to search form. Trooper Hoffman found a half-smoked marijuana cigarette under the driver's floor mat and a marijuana kit in the center console. The kit contained a small baggie of marijuana and various items of drug paraphernalia such as grinders, and a lighter.

Sailor was taken to the hospital for a blood test. Sailor agreed to have his blood drawn. The blood test revealed marijuana metabolites in Sailor's system.

Corporal Steven Schmit, an accident reconstructionist with the Pennsylvania State Police, determined that Sailor was going about 50 miles per hour in a 35 mile an hour zone.

Trial Court Opinion, filed Dec. 29, 2023, at 1-2.

At trial, the Commonwealth elicited testimony regarding Sailor's demeanor at the scene of the accident. Trooper Hoffman testified that when he approached Sailor, Sailor was "very calm, really displayed no emotion at all." N.T. Oct. 30, 2018, at 31. He further stated Sailor was "extremely calm . . . even indifferent," "never really asked about the victim," and "[d]idn't show any emotion." *Id.* at 34. Sailor objected based on relevance, stating that "[u]nless they can relate it to one of the things they're trying to prove people act --" *Id.* at 34-35. The trial court overruled the objection reasoning it "assume[d] [the Commonwealth's] going to use that as a basis for an opinion," and the Commonwealth replied, "Yes." *Id.* at 35. The trooper then

- 2 -

stated that people react differently after striking something, "but in almost every case there's some emotion, even over a crunched bumper." *Id.* He agreed that Sailor's behavior was different than the behavior he normally observed. *Id.* Trooper Hoffman stated it was his opinion that Sailor was under the influence of marijuana based on the field sobriety test results and Sailor's "extreme calmness," lethargy, slow reactions, lack of emotion, and bloodshot eyes. *Id.* at 41-42. On cross-examination, Trooper Hoffman agreed that it was possible that some people remain calm and quiet during traumatic situations. *Id.* at 87.

Corporal Adam Kirk testified he first met Sailor at the hospital, and he observed that Sailor was walking slowly and seemed relaxed. N.T., Oct. 31, 2018, at 15-16. He testified that typically when people are involved in a crash they are "very upset." *Id.* at 28. He further testified that when an accident involves a person getting injured, people usually ask how the person was doing, but Sailor did not ask about the victim. *Id.* at 29. He said that Sailor did ask about himself, and Corporal Kirk told him that in "the worst case the child dies and [Sailor] was found at fault for the crash, he was looking at homicide by motor vehicle." *Id.* The corporal then said "that the best case is that the child lived, and he was found not at fault, . . . and he was just looking at a DUI." *Id.* Corporal Kirk stated that Sailor's demeanor never changed. *Id.* at 30. He testified that based on the totality of the circumstances he believed Sailor was under the influence of marijuana, which made him incapable of safely operating a vehicle. *Id.* at 32. He based this opinion on the crash, the

strong odor of marijuana in the car, the tests at the scene, his own tests, Sailor's admission, his red eyes, and Sailor's lack of emotion. *Id.* at 33.

Sailor presented the video deposition of an expert in accident reconstruction, Steven W. Rickard. On cross-examination, the expert admitted he had incorrectly calculated Sailor's speed and now agreed Sailor had been speeding at the time of the accident. N.T. Dep. of Steven W. Rickard, Oct. 11, 2018, at 76-80. The expert also testified about Sailor's inability to see the pedestrian because of poor lighting and her dark clothing. He also said that Sailor's stopping distance was consistent with that of a sober person. *Id.* at 21, 41-47, 49-50.

A jury convicted Sailor of aggravated assault by vehicle while DUI, aggravated assault by vehicle, DUI of controlled substance, possession of small amount of marijuana, and possession of drug paraphernalia.[1] The court found him guilty of obedience to traffic-control devices, driving vehicle at safe speed, and careless driving.[2]

At sentencing, Sailor made a motion for extraordinary relief seeking the trial judge's recusal. Sailor cited a communication between the trial judge and a juror that had not been disclosed until after the verdict.[3] A juror had asked

---

[1] 75 Pa.C.S.A. §§ 3735.1(a), 3732.1(a), 3802(d)(2), 35 P.S. §§ 780-113(a)(31)(i), and 780-113(a)(32), respectively.

[2] 75 Pa.C.S.A. §§ 3111(a), 3361, and 3714(a), respectively.

[3] Prior to sentencing, Sailor filed a motion to recuse because he anticipated that the trial judge would be a witness as to the motion for extraordinary relief. The court denied this motion.

- 4 -

when the sentencing would be, and the court responded that that "jurors have no involvement in sentencing and that the issue of guilt first has to be decided." **See** Remand Hearing, 11/12/20, Ex. D1. The court denied the motion and sentenced Sailor to two to five years' incarceration.

Sailor filed a post-sentence motion, which the court denied. Sailor appealed and we remanded for an evidentiary hearing on the issue of the *ex parte* communication between the juror and the court. On appeal after remand, we summarized the communication and proceedings and concluded Sailor was not prejudiced by the *ex parte* communication:

> Both the trial court and trial court's prior legal intern agree that the relevant conversation dealt with sentencing. **See** Remand Hearing, 11/12/20, at 10, 22-23. In addition, there is agreement that at least one other individual, potentially another juror, was present at that time. **See id.**, at 10, 23 (the legal intern did not recall whether it was a juror or courthouse employee that was present beyond that of the court, the intern, and the known juror).
>
> At the remand hearing, the email sent to the parties one day after the jury rendered its verdict apprising them of the nature of the communication between the court and the juror was entered into the record. **See** Remand Hearing, 11/12/20, Ex. D1. In that email, which is the most proximate account of the *ex parte* event, the court states that a juror "asked when the sentencing would be." **Id.** Acknowledging the juror's misunderstanding that she would somehow be needed for sentencing purposes, the court responded that "jurors have no involvement in sentencing and that the issue of guilt first has to be decided." **Id.** As made clear in the email, the court thought this question to be procedural in nature rather than specific to Sailor and therefore used that opportunity to educate that juror. **See id.**

The court materially reaffirmed its testimony in the remand hearing. The court considered the conversation between the juror and itself to be "ministerial at best." Remand Hearing, 11/12/20, at 10. The court then indicated that it candidly responded to the juror's question asking when sentencing would be by unequivocally stating that the jurors do not decide that issue. The court also emphasized that the juror in question was excused at some point thereafter. *See id.*, at 11.

We perceive no inconsistencies in the testimonies and evidence describing the fundamental nature of the communication between the juror and the court. With the email serving as the most contemporaneous account of the communication, the court makes clear that it was quick to dismiss any notion that guilt had been adjudicated at that point or that any of the jurors would have involvement with sentencing. The court perceived the juror's question as generically asking about court procedure, and there have been no facts uncovered or suggested that are specific to Sailor and his case or that could possibly serve as a basis for prejudgment. Furthermore, none of the conversation's content is contradicted by the prior legal intern's testimony. While there remains some level of ambiguity as to the identity of the juror and discongruity as to the exact moment that juror was specifically dismissed, we can find no basis for concluding the trial court abused its discretion in finding that Sailor was not prejudiced by the conversation.

*Commonwealth v. Sailor*, No. 970 MDA 2019, 2021 WL 387195, at *3 (Pa.Super. filed Feb. 3, 2021).

This Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal. In February 2022, Sailor filed a

timely PCRA petition. The PCRA court[4] held a hearing, where trial counsel, appellate counsel, and Sailor testified.[5]

Trial counsel testified that at trial he objected to testimony about Sailor's lack of emotion at the scene as irrelevant and he tried to counter it in his closing. N.T., Sept. 1, 2022, at 16-18. He agreed that he had included in the motion *in limine* an objection to the testimony as prejudicial and not probative, but had withdrawn that portion of the motion. ***Id.*** He did not recall why he withdrew it. ***Id.*** at 19.

Trial counsel further testified that he had conversations with the accident reconstruction expert Rickard, who prepared two reports. ***Id.*** at 19. Trial counsel testified that he found out during the questioning of Rickard that Rickard had not done the calculation correctly. ***Id.*** at 20. He stated that prior to the deposition he had asked Rickard if he was sure the calculations were accurate, and Rickard responded yes, and counsel stated that he had gone over his outline for trial with the expert. ***Id.*** at 20-21. When asked if he found the miscalculation, trial counsel stated that he "[didn't] do that type of math." ***Id.*** at 21. Trial counsel agreed that at trial the expert was "fact checked in real time" on the speed calculation. ***Id.***

---

[4] The Honorable Marc Lovecchio presided at trial. He retired prior to the PCRA proceedings, which were before the Honorable Kenneth D. Brown.

[5] Sailor's testimony related to his claim that counsel was ineffective regarding the advice not to testify. He does not raise this issue on appeal.

Trial counsel further testified that after the verdict he learned that the trial judge had had a conversation with a member of the jury. *Id.* at 26. He was involved with the motion for extraordinary relief and initial hearing, but another attorney at his firm handled the appeal.

Appellate counsel testified that she had two theories to challenge the *ex parte* communications: (1) the juror was unfairly biased and the parties did not have an opportunity to question the juror to see whether bias existed such that he or she should have been removed; and (2) the trial judge had erred by not telling the parties about the conversation until after the verdict. *Id.* at 35. Appellate counsel agreed that her original and supplemental briefs did not say that failure to maintain an accurate contemporaneous record of the communication with the juror was prejudicial *per se*. *Id.* at 42, 47. On cross-examination, she agreed that there were three occasions where there was testimony about the communication—the hearing on extraordinary relief, the hearing on the post-sentence motion, and the remand hearing. *Id.* at 51. She stated that the statements from the trial judge did not match the trial transcript. *Id.*

The PCRA court denied the PCRA petition. Sailor appealed. He raises the following issues:

> 1. Did Senior Judge Brown err in rejecting Sailor's claim that trial counsel was ineffective in failing to seek the exclusion of evidence that, after crashing into the victim, he lacked emotion and failed to inquire into her condition, among other affect evidence, as less probative of a drug-recognition expert's opinion that he was under the influence

of marijuana than risking unfair prejudice by painting him as cold and unsympathetic to his conduct and her injuries?

2. Did Senior Judge Brown err in rejecting Sailor's claim that trial counsel was ineffective in failing to prepare and/or offering testimony from an accident reconstructionist as to Sailor's speed at the time of the crash whose calculations the Commonwealth disproved in real time?

3. Did Senior Judge Brown err in rejecting Sailor's claim that trial counsel's aforementioned errors, cumulatively, caused him prejudice by painting him as cold and unsympathetic to his conduct and the victim's injuries and making Sailor's defense team appear inept, or, worse, like they were attempting to put false evidence before the jury?

4. Did Senior Judge Brown err in rejecting Sailor's claim that appellate counsel was ineffective in failing to properly advance a claim that Judge Lovecchio's failure to maintain an accurate and contemporaneous record of his *ex parte* communications with a juror warranted a presumption of prejudice and a new trial as a matter of law?

Sailor's Br. at 4-5 (suggested answers omitted).

"When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error." **Commonwealth v. Anderson**, 234 A.3d 735, 737 (Pa.Super. 2020) (citation omitted).

Sailor's claims challenge counsel's effectiveness. Counsel is presumed effective. A petitioner may overcome this presumption by showing that: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). "To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been

different but for counsel's ineffectiveness." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127-28 (Pa. 2011).

Sailor argues the PCRA court erred in denying his claim that counsel was ineffective because he did not raise a Rule 403 objection to testimony regarding Sailor's failure to inquire into the victim's condition, alleged lack of emotion, and other affect evidence. He argues his underlying claim that the evidence was inadmissible had arguable merit, as a reasonable trial judge could conclude that the probative value of the evidence was outweighed by the risk it would paint Sailor as cold and unsympathetic. He argues that the observations of Sailor's affect were minimally probative of the trooper's opinion that Sailor was intoxicated and that any probative value was outweighed by unfair prejudice. He further maintains counsel had no reasonable basis for failing to object to the evidence and that the error was prejudicial, as it allowed the Commonwealth to bolster its weak case by "painting Sailor as cold and unsympathetic to his conduct and the victim's injuries." Sailor's Br. at 21-22. He further claims that at the PCRA hearing, trial counsel misremembered the objection he made, and could not explain why he withdrew a motion *in limine* raising the Rule 403 objection.

Regarding prejudice, he argues the PCRA court's conclusion that the trial court would have admitted it with a cautionary instruction, and that the general instruction provided to the jury informed it not to make decisions based on prejudice, was speculative and ignored that Sailor would have been entitled to a specific instruction. Sailor claims the Commonwealth had

"virtually no evidence to suggest" intoxication or speeding caused the accident, noting Sailor did not testify and the victim did not remember what happened. *Id.* at 40-41. He argues it was not an overwhelming case on causation and it would have been reasonable for the jury to find Sailor's alleged intoxication and speeding correlated with, but did not cause, the accident. He further claims that "the vast bulk of research on the subject suggests that drivers under the influence of marijuana are less likely to speed, and tend to give more of a berth to others using the road." *Id.* at 42 (emphasis omitted). Sailor further claims the trial court did not find that if the testimony had not been admitted or if it had been appropriately limited, he would have been convicted anyway.

The PCRA court concluded the claim lacked merit, reasoning that Sailor's conversations with Trooper Hoffman and Corporal Kirk and his affect or demeanor were relevant to whether he was under the influence of marijuana:

> [T]he evidence was presented in the context of Sailor's conversations with the troopers and his demeanor to show that his reactions, demeanor, and judgment were impacted by his ingestion of marijuana. The evidence showed that Sailor was calm, relaxed, sluggish and lethargic immediately after a serious traffic incident. Sailor showed imbalance during standard field sobriety tests. Sailor's vehicle reeked of the odor of marijuana; the strongest Trooper Hoffman had smelled in his 20-year career. Trooper Hoffman found a half-smoked marijuana cigarette under the driver's side floor mat and a marijuana kit containing marijuana and paraphernalia to ingest marijuana in the center console. Sailor initially told Trooper Kirk that he had not smoked marijuana in a few days. When Trooper Kirk indicated he would not observe the signs if he last smoked days ago and he told Sailor that he needed to be honest about it, Sailor

- 11 -

changed his statement to indicate that he had smoked some of a joint the previous night around 10:30 p.m. N.T., 10/31/2018, at 27.

Trooper Kirk also testified that typically when people are involved in a crash they are very upset. If there are injuries involved, people generally are upset about that and ask if the other person is going to be okay. He testified that Sailor was not upset and he never asked about how the pedestrian was doing. Trooper Kirk noted that Sailor did ask what the worst case and best case he was looking at with the crash. Trooper Kirk explained that in the worst case the child dies and he was found at fault for the crash, he was looking at homicide by motor vehicle. If the child lived and Sailor was not at fault, Sailor would just be looking at a DUI. N.T., 10/31/2018, at 28-29. This information was considered by the troopers when considering the totality of the circumstances in formulating their opinion that Sailor was under the influence of marijuana to a degree that he was incapable of safely driving.

Trial Ct. Op. at 11-12.

The court found that even if counsel had objected based on Rule 403, the trial court likely would have instructed the jury not to base its verdict on sympathy for or prejudice against the party. *Id.* at 13. The court noted that the court gave such an instruction in its final instructions, and the jury is presumed to have followed the instructions. *Id.* It thus concluded Sailor failed to establish prejudice.

The court did not err. The challenged evidence was admissible because it was probative of whether Sailor was under the influence of marijuana at the time of the accident and the prejudicial impact did not outweigh the probative value, and therefore his underlying claim lacked merit. Further, if counsel had objected to the evidence as prejudicial, the court at most would have issued

a cautionary instruction, similar to that which was included in the final instructions. Sailor therefore cannot establish a reasonable probability that the outcome of the trial would have been different had counsel raised a Rule 403 objection.

Sailor next contends that he established trial counsel was ineffective for failing to prepare and for offering testimony from an accident reconstructionist as to Sailor's speed where the Commonwealth disproved the reconstructionist's calculations. He argues the underlying claim that counsel should have prepared and not presented the testimony had arguable merit. He further maintains counsel did not have a reasonable basis for presenting it, but rather counsel testified that he did not review the calculations and relied on the expert. He argues an attorney who advances an expert opinion without understanding it runs a risk of not reasonably advancing his client's interests. He further maintains counsel's actions caused prejudice because it bolstered the Commonwealth's case by "fact-checking Sailor's expert in real time, making Sailor's expert and his defense appear inept, or, worse, dishonest, before the jury." Sailor's Br. at 23. He argues the error undermined the expert's credibility and that counsel did not need to present the testimony to also admit other helpful testimony.

The trial court concluded the expert did not only provide testimony as to speed but also evidence that the pedestrian's clothing and the lighting impacted the ability to see and that his stopping time was similar to that of a sober person:

- 13 -

Speeding is a summary offense punishable by a fine. While the speeding was also a component of the aggravated assault by vehicle charge, the defense was focused on the lack of causation. The defense expert accident reconstructionist, Steven Rickard, presented additional testimony to show that the accident was not caused by Sailor's speeding but rather was due to the victim's dark clothing and poor illumination at or near the point of impact and that Sailor's stopping distance was consistent with a sober person. Therefore, even though the defense expert made a math error (he put a decimal in the wrong place and failed to recalculate Sailor's speed with the correct number--2.966 seconds, rather than 29.66 seconds) which was not caught by either the expert or trial counsel before the expert testimony, there were valid reasons to still call the expert witness. Trial counsel also testified that he relied on the expert to do the calculations and trial counsel did not do that type of math; that's what the expert was for. PCRA Transcript, 09/01/2022, at 20-22.

Although it would have been better if the expert had the correct speed calculation prior to testifying, the court does not find that Sailor was prejudiced. If trial counsel had not called Mr. Rickard as a witness, he would have lost important testimony regarding Sailor's inability to see the pedestrian due to the poor lighting and her dark clothing, as well as Rickard's testimony that Sailor's stopping distance was consistent with a sober person. There still would have been testimony from Corporal Schmit regarding Sailor's speeding and it would have been uncontested. What would not have occurred and would have been detrimental to the defense would be the important testimony Mr. Rickard provided relating to causation, i.e., there would not have been a defense that the incident was caused by the pedestrian or that speeding was not a factor in causation because Sailor stopped in essentially the same stopping distance as a sober person.

Trial Ct. Op. at 13-14.

We find no error. We cannot say that Sailor carried his burden to prove that counsel lacked a reasonable basis for admitting the expert testimony. Defense counsel could not have admitted only the portion of the video

- 14 -

deposition with the favorable testimony – that the pedestrian's clothing and poor lighting caused the accident – without showing the Commonwealth's cross-examination. If defense counsel had opted not to show the expert's testimony at all, Sailor would have been left with little defense other than challenging the troopers' credibility, which Sailor has not attempted to show was suspect. Further, Sailor did not establish prejudice. Therefore, counsel was not ineffective for admitting the expert testimony.

In his third issue, Sailor maintains that "even if one of the two above missteps was insufficient to cause him prejudice, together, they did so by allowing the Commonwealth to bolster its weak case on causation with evidence that would serve to inflame the jury against him and to make his expert on causation, and his defense team as a whole, appear inept or dishonest." *Id.* at 23. He claims the errors were cumulative and the Commonwealth's case on causation was minimal.

Here, Sailor's claim that counsel was ineffective for failing to raise a Rule 403 objection lacked merit and his claim that counsel was ineffective regarding the expert testimony failed because counsel had a reasonable basis for his actions. Because the claims failed on prongs other than the prejudice prong, they cannot collectively warrant relief based on cumulative prejudice. *See Spotz*, 84 A.3d at 321 n. 22 (where counsel ineffectiveness claims fail because of "lack of merit or arguable merit," "no number of failed [] claims may collectively warrant relief if they fail to do so individually" (alteration in original)). Further, there is no cumulative prejudice here requiring a finding of

ineffectiveness. The claims "are independent factually and legally, with no reasonable and logical connection warranting a conclusion that the cumulative effect was of such moment as to establish actual prejudice." ***See id.***

In his last claim, Sailor maintains that appellate counsel was ineffective for failing to properly advance a claim that the trial judge's failure to maintain an accurate and contemporaneous record of the judge's *ex parte* communications with a juror warranted a presumption of prejudice and a new trial as a matter of law. He claims that his underlying claim that he was entitled to a retrial as a matter of law had arguable merit. Sailor argues the trial court's failure to disclose the *ex parte* communication and develop a record was injurious and prejudice should be presumed. He claims the trial court did not inform the parties of the communication, did not schedule a hearing, and, two months later after Sailor had raised the issue, "made the unorthodox decision to testify at" a hearing over which he presided. Sailor's Br. at 68. Sailor claims court precedent requires the court presume prejudice here and counsel was ineffective to not invoke the presumption. He maintains that if appellate counsel had adequately argued the issue, this Court may not have concluded an evidentiary hearing was needed. He further argues his counsel had no reasonable strategic basis for forgoing the argument, and there is a reasonable likelihood the argument would have persuaded this Court.

The PCRA court found the claim lacked merit and Sailor failed to establish prejudice:

Sailor's final claim is that appellate counsel was ineffective for failing to properly argue on appeal that the trial court's failure to maintain and disclose an accurate and contemporaneous record of its *ex parte* contacts with jurors warranted a presumption of prejudice and the award of a new trial as a matter of law. The court disagrees with Sailor's interpretation of ***Commonwealth v. Bradley***, 459 A.2d 733 (Pa. 1979). In ***Bradley***, the Court overruled the civil case that imposed a prophylactic rule that any communication between a judge and a deliberating jury, no matter how innocuous, had in the absence of counsel mandates the grant of a new trial even in the absence of prejudice to either party. The Court instead adopted the Chief Justice Roberts' dissent in ***Yarsunas v. Boros***, 233 A.2d 696, 698 (Pa. 1966) wherein he stated:

> The reason for prohibiting a trial judge from communicating with a jury *ex parte* is to prevent the court from unduly influencing the jury and to afford counsel an opportunity to become aware and to seek to correct any error which might occur. Where there is no showing either that the court's action may have influenced the jury or that its directions were erroneous, then the reason for the rule dissolves.[]

***Kersey Mfg. Co. v. Rozic***, supra [422 Pa.] at 572, 222 A.2d at 716.

The ***Bradley*** Court then reminded trial courts that the failure to maintain accurate and contemporaneous records of all communications between the court and the jury may force an implication of prejudice where arguably none exists. ***Bradley***, 459 A.2d at 739. In other words, generally a party must either establish that the trial court gave erroneous directions or instructions to the jury or that the court actually influenced the jury with the *ex parte* communication. If an accurate and contemporaneous record of the communication is not maintained by the trial court, the appellate courts may but are not required to imply prejudice where arguabl[y] none exists. Therefore, Sailor was not entitled to a presumption of prejudice and a new trial as a matter of law.

The court also finds that Sailor was not prejudiced. The Superior Court was aware of ***Bradley*** and, in fact, cited to

it in its decision rejecting Sailor's claim regarding the communications with Alternate Juror # 2. 2021 WL 387195, *2. The Superior Court quoted the portion of **Bradley** related to the implication of prejudice but instead found that any error was harmless. In addition, PCRA counsel filed a petition for reargument on this specific issue. The Superior Court denied the reargument petition, and the Pennsylvania Supreme Court denied Sailor's petition for allowance of appeal.

Trial Ct. Op. at 24-25.

We agree with the PCRA court's assessment of **Bradley**. There, the Pennsylvania Supreme Court held that *ex parte* communications between a court and jury will require reversal only where they are likely to prejudice a party. **Bradley**, 459 A.2d at 734. As the trial court noted, the Supreme Court pointed out that the reason trial judges are prohibited from communicating *ex parte* with a jury to "prevent the court from unduly influencing the jury" and to ensure counsel is aware and correct any potential error and found the rule was not needed where the court did not influence the jury or provide erroneous instructions. **Id.** at 739 (quotation marks and citations omitted). The Supreme Court reminded trial courts that "failure to maintain an accurate and reviewable contemporaneous record of all instructions and communications between the court and a jury may force an implication of prejudice where arguably none exists." **Id.** at 739.

We agree with the trial court that **Bradley** does not require a finding of *per se* prejudice where a court does not create a contemporaneous record. Rather, **Bradley** states that failure to maintain a contemporaneous record may require a finding of prejudice; it does not require such a finding. Here,

- 18 -

on appeal, this Court found the record developed regarding the communications established that no prejudice occurred. The alternate argument advanced on PCRA, that the court must find *per se* prejudice under *Bradley*, would not have changed this outcome, particularly as this Court cited *Bradley* when disposing of the claim. This claim lacks merit.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/03/2025