590 A.2d 362

**Jonathan A. BRISKIN and Alice Briskin**

v.

**LERRO ELECTRICAL CORPORATION and Frank Kovary, Appellants.**

**Jonathan A. BRISKIN and Alice Briskin, h/w**

v.

**LERRO ELECTRICAL CORPORATION and Frank Kovary, Appellants.**

Superior Court of Pennsylvania.

Argued March 12, 1991.

Filed May 6, 1991.

Petition for Allowance of Appeal Denied Oct. 11, 1991.

228

Francis T. McDevitt, Philadelphia, for appellants.

James E. Colleran, Philadelphia, for appellees.

Before MONTEMURO, JOHNSON and HESTER, JJ.

HESTER, Judge:

The issue before us is whether the trial court erred in granting plaintiffs-appellees a new trial based upon the court's improper communications with the jury. We affirm.

This action was instituted following a motor vehicle accident between Jonathan Briskin and Frank Kovary, an employee of defendant-appellant, Lerro Electrical Corporation. Mr. Briskin and his wife, appellees, seek recovery for injuries they allege resulted from the accident. A jury trial began on March 19, 1990, culminating in a verdict for defendants-appellants on March 23, 1990. Appellees requested a new trial in their motion for posttrial relief, which the court granted on July 23, 1990. This appeal followed.

The basis for the trial court's grant of a new trial was that it had erred in failing to apprise the parties concerning a note from the jury during deliberations. The court concluded that this failure was critical in light of hostilities which had developed between two jurors. The following facts are pertinent. Jury deliberations began at approxi-

mately 11:00 a.m. on March 22, 1990. Sometime thereafter[1] the jury submitted a question to the court. Following a discussion with counsel for all parties, the trial court answered the question in open court and then excused the jury to resume its deliberations. At approximately 4:00 p.m., unbeknownst to the parties, the jury submitted a second note to the court, this time indicating that it was deadlocked and requesting further instructions.[2] The trial court, through the court crier, told the jury that both counsel were unavailable and instructed it to continue deliberating. Shortly thereafter, the jury was excused for the day and was instructed to resume its deliberations the next morning.

When Vince DiMezzo, the court crier, excused the jury for that day, in accordance with the trial court's instructions, four of the female jurors approached him concerning hostilities between two of the jurors. Juror number seven, Mary Lu Chromiec, told DiMezzo, "I'm very upset. I was threatened." Deposition testimony of Vince DiMezzo, 5/8/90, at 18. She told him that one of the male jurors had told her that he hated her, and she further indicated that she was not going to return in the morning. *Id.* at 19. Ms. Chromiec's deposition establishes the following. She had been frightened by remarks made to her by the juror, and she had asked Mr. DiMezzo "how to handle it." Deposition testimony of Mary Lu Chromiec, 4/20/90, at 10. Ms. Chromiec stated that "[a]nother juror had come right out, in a very venomous way, and said that he hated my guts; that I thought I knew everything and he just hated my guts." *Id.* at 12. Mr. DiMezzo advised Chromiec to write a letter to the judge and "the judge would advise what to do." *Id.* at 13. After leaving the building, Ms. Chromiec saw Mr.

1. Although the notes of testimony do not indicate when the note was submitted to the court, the transcript indicates that the jury was excused to resume deliberations at 3:00 p.m.

2. This note apparently has been lost and is not in the record certified to us. The substance of the note has been established through post-verdict deposition testimony of two jurors, the court crier, and the trial judge.

DiMezzo on the concourse and approached him again. She was crying and "wanted more support from what—I thought the court at that point should have given me some more support.... I think I more or less said, well, isn't somebody going to take me home, ..." *Id.* at 15. She also was concerned about her physical safety. *Id.* Although Ms. Chromiec wrote the note to the trial judge, she never submitted it to the court. Instead, she spoke to the juror herself the next day. *Id.* at 16.

The trial judge, the Honorable Nelson A. Diaz, stated that Mr. DiMezzo had told him "there were arguments between two jurors," but "the following day that those arguments were pacified." The judge also stated that DiMezzo had not told him of his discussions on the concourse with Ms. Chromiec and other jurors. Notes of testimony, 4/8/90, at 19.

Appellees' counsel discovered the existence of the second note from the jury and learned of the animosity between the two jurors through discussions with the jurors following the verdict.[3] Based on these discussions, appellees filed a motion for post-trial relief, the parties submitted briefs, and the court heard oral argument on the issues. The trial court determined that it had erred in failing to apprise the parties of the existence of the second note from the jury and that the error had been magnified due to the hostilities between the jurors. In support, the trial court reasoned as the follows:

> The communications between the court and the jury in reference to the note and the lack of communication between the two concerning juror hostilities creates an environment which precludes proper deliberation. It is this court's impression that if it had been more responsive to the jury's previous note and given it the importance and attention it deserved by communicating directly with the jurors in counsel's presence, Mrs. Chromiec would have confronted the court with her dilemma instead of

3. The trial court had granted counsel permission to speak with the jurors.

continuing to deliberate in a hostile atmosphere. This court suspects that its behavior was harmful because it led jurors to believe they would have to continue deliberating indefinitely despite the deadlock and juror hostilities. This court is not convinced that there was no "reasonable possibility" of harm. The court acknowledges its error and in the interest of justice grants plaintiff's motion for a new trial and for recusal.

Trial court opinion, 7/23/90, at 4.

Appellants first contend that the trial court was precluded from addressing the propriety of its ex parte communication with the jury because such consideration necessarily required reliance on a discharged juror's testimony concerning what occurred among jurors in the jury room. *Pittsburgh National Bank v. Mutual Life Insurance Co. of New York*, 493 Pa. 96, 425 A.2d 383 (1981). We disagree. Ex parte communications between the court or its officers and the jury are a proper consideration for the trial court when raised in post-verdict motions. If we adopted appellants' position, parties would be prohibited from proving an alleged prejudicial error simply by the unfortunate fact that they never learned of the ex parte communication (or that it was concealed) until after the verdict was rendered and the jury discharged. Clearly, the law has never contemplated such a result. *See, e.g., Commonwealth v. Elmore*, 508 Pa. 81, 494 A.2d 1050 (1985) (court considered whether ex parte communication with jury was error when error was asserted by defense counsel who learned of communication through discussion with jury foreman after verdict was rendered). Moreover, appellants' reliance on *Pittsburgh National* is misplaced. That case concerned the admissibility of a discharged juror's testimony concerning his independent inspection of a vehicle similar to the automobile involved in that case and the inspection's possible effect on jury deliberations. We find it inapplicable to the present case.

The issue presented herein is controlled by our Supreme Court's decision in *Commonwealth v. Bradley*, 501

Pa. 25, 459 A.2d 733 (1983), which announced the standard for determining whether contact between a juror and an officer of the court warrants a new trial in both criminal and civil cases. The *Bradley* Court adopted the reasoning of the dissent in *Yarsunas v. Boros*, 423 Pa. 364, 223 A.2d 696 (1966), and stated, "The reason for prohibiting a trial judge from communicating with a jury ex parte is to prevent the court from unduly influencing the jury and to afford counsel an opportunity to become aware and to seek to correct any error which might occur." *Commonwealth v. Bradley, supra*, 501 Pa. at 37, 459 A.2d at 739, quoting *Yarsunas v. Boros, supra*, 423 Pa. at 368, 223 A.2d at 698 (Roberts, J., dissenting). The *Bradley* Court continued, "We do, however, remind the trial bench that failure to maintain an accurate and reviewable contemporaneous record of all instructions and communications between the court and a jury may force an implication of prejudice where arguably none exists." *Commonwealth v. Bradley, supra*, 501 Pa. at 37–38, 459 A.2d at 739. Thus, *Bradley* holds that only ex parte communications which are likely to prejudice a party will require reversal.

In addition to the above standard, we must consider our scope of review. In reviewing an order granting a new trial, we must assess whether the trial court "clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case." *Carter v. U.S. Steel Corp.*, 390 Pa.Super. 265, 272, 568 A.2d 646, 649 (1990), *petition for allowance of appeal granted*, 525 Pa. 630, 578 A.2d 925 (1990); *see also Gray v. H.C. Duke & Sons, Inc.*, 387 Pa.Super. 95, 563 A.2d 1201 (1989).

 In light of our scope of review, we are satisfied that the trial court did not abuse its discretion in concluding that there was a reasonable possibility of harm. The jury submitted to the court a note stating that it was deadlocked, the jury was advised by a court officer that counsel were unavailable when, in fact, they were present, and the jury was told to continue deliberating without the knowledge of the parties and their counsel. The matter was complicated

by the fact that Mary Lu Chromiec, juror number seven, feared for her safety due to comments from another juror concerning her manner and views during deliberations, and Ms. Chromiec's initial attempts to bring the matter to the trial judge's attention through the court crier failed.[4] Thus, the jury was compelled to deliberate without an answer to its written note to the trial judge, and the court crier failed to communicate to the court the various conversations he had with jurors indicating hostility, rancor, and a menacing environment which pervaded the jury's deliberations. We conclude the trial court did not abuse its discretion in granting a new trial.

Order affirmed.

**4.** We do not consider Ms. Chromiec's failure to submit a note to the trial court the following day to be controlling, in light of the fact that it was the responsibility of the court crier to bring such a matter to the court's attention. Furthermore, once the trial court learned of the problem after-the-fact but before the verdict was rendered, the trial court ignored it and did not inform the parties.