**Wayne JOHNSON and William English, Appellants**

**v.**

**Lakesha WHITE, Southeastern Pennsylvania Transportation Authority, a/k/a SEPTA a/k/a Triage Connect a/k/a Triage Connect SEPTA.**

Commonwealth Court of Pennsylvania.

Argued Nov. 11, 2008.

Decided Jan. 8, 2009.

Jeffry S. Pearson, Philadelphia, for appellants.

James A. Bosakowski, Philadelphia, for appellees.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BUTLER.

Wayne Johnson (Johnson) appeals from the December 7, 2007 order of the Court of Common Pleas of Philadelphia County (trial court) denying Johnson's motion for a new trial on the issue of damages based on alleged insufficient evidence and ex parte communication between the judge and jury. The issues presented are: 1) whether the trial court erred by refusing to grant Johnson a new trial on the issue of damages; 2) whether the trial court abused its discretion by responding to questions from the jury ex parte and off the record; 3) whether the trial court erred in failing to strike Defendants' answer and new matter as untimely; and 4) whether the trial court erred in failing to sanction Defendants for discovery misconduct. For the reasons that follow, we affirm the trial court.

Johnson was involved in a multi-vehicle accident in June 2003 along with co-plaintiff, William English,[1] and defendants, Southeastern Pennsylvania Transportation Authority (SEPTA), Triage Connect and Lakesha White (collectively, Defendants). On April 22, 2005, Johnson and English (collectively, Plaintiffs) filed suit against Defendants. SEPTA and Triage Connect filed an answer on July 29, 2005 and White filed an answer on September 7, 2005. During the discovery period, there were several disputes regarding production of documents, responses to interrogatories, and scheduling depositions. Orders were issued against both Plaintiffs and Defendants compelling production, responses and depositions. Among the discovery disputes was the Plaintiffs' failure to produce auto-insurance information, production of incomplete information, and misrepresentation as to the substance of the missing information. Plaintiffs' attorney was publicly admonished for not being candid with the trial court concerning the auto-insurance policy.[2]

During the trial, Defendants stipulated generally as to liability, but not to the causal relationship between Plaintiffs' injuries and the accident. This issue was put to the jury, in addition to the task of quantifying Plaintiffs' damages. During the jury deliberations, the court answered two questions posed by the jury members: (1) whether they could see evidence pre-

---

1. William English was a co-plaintiff in the initial lawsuit. The jury awarded him $76,060. English is not a party to the instant appeal.

2. Plaintiffs' attorney at that stage of proceedings, Dora R. Garcia, has since been suspended on consent from the Bar of this Commonwealth for fifteen months by order of the Supreme Court of Pennsylvania dated October 25, 2007, relative to violations of the Rules of Professional Conduct unrelated to the instant action.

sented at trial, and (2) whether they could award English damages for lost wages in addition to other compensatory damages. The parties had already agreed that no exhibits would be allowed in the jury room during deliberations. Thus, the trial judge responded, albeit off the record and ex parte, that: (1) the jury could not see evidence, and (2) the decision to award additional damages was completely up to them. The jury returned a compensatory damage award in favor of Johnson in the amount of $65,000. Unsatisfied by this award, Johnson filed a motion for post-trial relief. The trial court denied the motion. Johnson appealed.

 Johnson first argues that the trial court erred in refusing to grant a new trial on the issue of damages. Johnson claims that evidence which was not contradicted by Defendants clearly established that he had sustained injuries warranting damages far greater than those awarded. However, "[I]t is a fundamental and long-standing precept that the decision to order a new trial is one that lies within the discretion of the trial court." *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 447, 625 A.2d 1181, 1184 (1993).

> A jury verdict is set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to "shock one's sense of justice" a new trial should be awarded.... If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the

court to substitute its judgement for the jury's.

*Kiser v. Schulte,* 538 Pa. 219, 225, 648 A.2d 1, 4 (1994) (citations omitted).

 Johnson argues that, similar to the plaintiffs in *Andrews v. Jackson,* 800 A.2d 959 (Pa.Super.2002) and *Kraner v. Kraner,* 841 A.2d 141 (Pa.Super.2004), he presented unequivocal medical evidence that he sustained injuries as a consequence of the automobile accident, and that a new trial on damages is warranted. However, in *Andrews* and *Kraner,* the juries did not award *any* damages to the plaintiffs, even though the defendants were found to be liable for the plaintiffs' injuries. Defendants do not argue that Johnson suffered no damages from the automobile accident. The jury determined, based on the evidence presented, that Johnson's damages amounted to $65,000.[3] The parties presented the jury with differing pictures of Johnson's ongoing injury. While Johnson attempted to convince the jury that he suffered permanent injury requiring surgery, Defendants called the extent of his ongoing injury into question primarily through cross-examination, highlighting the fact that Johnson went back to work on a heavy duty job and discontinued medical treatment. Thus, while the jury's award of $65,000 may seem "woefully inadequate" to Johnson, it is not so contrary to the evidence as to shock one's sense of justice. Therefore, the trial court did not err, and a new trial on damages is not warranted.

 Second, Johnson argues that the trial court abused its discretion by responding to questions from the jury ex parte and off the record. "In reviewing an order granting a new trial, we must assess

---

3. It appears from the Johnson/English complaint that each plaintiff was seeking $150,000 in damages.

whether the trial court 'clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case.' " *Briskin v. Lerro Elec. Corp.*, 404 Pa.Super. 227, 590 A.2d 362, 365 (1991). When considering ex parte communications between a trial judge and the jury, the Court must consider that:

> [t]he reason for prohibiting a trial judge from communicating with a jury ex parte is to prevent the court from unduly influencing the jury and to afford counsel an opportunity to become aware and to seek to correct any error which might occur. *Where there is no showing either that the court's actions may have influenced the jury or that its directions were erroneous, then the reason for the rule dissolves.*

*Commonwealth v. Bradley,* 501 Pa. 25, 31, 459 A.2d 733, 736 (1983) (emphasis added). "[O]nly those *ex parte* communications between a court and jury which are likely to prejudice a party will require reversal." *Id.* at 27, 459 A.2d at 734.

 In the present case, the jury asked the trial judge: 1) whether the jury could award lost wages to plaintiff **English** in addition to other compensatory damages and 2) whether they could review a trial exhibit. Notes of Testimony, April 2, 2007 (4/2/07 N.T.) at 15. The trial judge simply told the jury that it was their decision as to whether they should include wages in the award, and that they were not allowed to see any evidence during deliberations. 4/2/07 N.T. at 15. As to the first jury question, the jury was asking if it could add wages to the damages it was planning to award English, not Johnson. 4/2/07 N.T. at 16. The trial judge's answer did not influence the jury's decision regarding Johnson, nor was his answer erroneous, as he simply stated that the determination was up to the jury. In addition, since the question concerned English and not John-

son, and the matter has been completely resolved as pertaining to English, any issues regarding what the jury could award English are moot. As to the remaining jury question, the parties had agreed that the jury would not be permitted to see the evidence once deliberations had started. 4/2/07 N.T. at 15. The trial judge's answers to the jury were not erroneous and could not have influenced the jury's decision, so there is no abuse of discretion.

 Next, Johnson argues that the trial court erred by failing to strike Defendants' answer and new matter as untimely.

> It is left to the sound discretion of the trial court "to permit a late filing of a pleading where the opposing party will not be prejudiced and justice so requires." Therefore, our review is limited to determining whether or not the trial court abused its discretion; "we may not substitute our judgment for the judgment of the trial court[.]"

*Gale v. Mercy Catholic Med. Ctr. Eastwick, Inc., Fitzgerald Mercy Div.,* 698 A.2d 647, 649 (Pa.Super.1997) (quoting *Ambrose v. Cross Creek Condominiums,* 412 Pa.Super. 1, 602 A.2d 864, 868 (1992)).

> When a party moves to strike a pleading, the party who files the untimely pleading must demonstrate just cause for the delay. It is only after a showing of just cause has been made that the moving party needs to demonstrate that it has been prejudiced by the late pleading.

*Peters Creek Sanitary Auth. v. Welch,* 545 Pa. 309, 314–15, 681 A.2d 167, 170 (1996).

 In the present case, Johnson never raised the issue of a requirement to show just cause until the appeal to this Court. Johnson made no mention of the issue in his preliminary objections below nor in the supporting memorandum of law; nor did he identify the issue in his state-

ment of matters complained of on appeal. Under Pa. R.A.P 1925(b)(4)(ii), "[t]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Johnson's statement of matters complained of on appeal simply states: "[t]he trial judge erred in failing to grant plaintiff's preliminary objections to [D]efendants' answer and new matter which were filed on the verge of trial." There is no mention of the just cause issue. Additionally, while the answers and new matter were filed approximately three to four months after Johnson's complaint, they were filed approximately *eighteen months prior to the commencement of trial.* Trial Court Opinion (Tr. Ct.Op.) at 5. Notably, SEPTA requested an extension of time to file when it received Johnson's complaint; Johnson's counsel refused. Tr. Ct. Op. at 6. The trial court committed no error in failing to sustain Johnson's objection.

◼ Moreover, any error in this regard would have been harmless, as striking the answer would have resulted in a default judgment which would have resolved the issue of liability but not the computation of damages. *See* Pa. R.C.P No. 1037(b)(1). As Defendants stipulated to liability prior to trial, the outcome here is the same as it would have been had there been a default judgment. As stated, any error in failing to sustain Johnson's objection for timeliness would have been harmless.

◼ Finally, Johnson argues that the trial court erred by failing to sanction Defendants for discovery misconduct. As

"[t]he decision to sanction a party for violating a discovery order and the severity of the sanction are both vested in the sound discretion of the trial court[,]" we review such sanctions or refusal to sanction to determine whether there has been an abuse of discretion, i.e., not merely an error of judgment, but an overriding or misapplication of the law, an exercise of judgment which is manifestly unreasonable, or judgment resulting from partiality, prejudice, bias or ill-will. *Jetson Direct Mail Servs., Inc. v. Dep't of Labor and Indus. State Workmen's Ins. Fund,* 782 A.2d 631, 634 (Pa.Cmwlth.2001).

◼ While Defendants were responsible for several discovery defaults, Johnson had to be ordered by the trial court to answer similar discovery requests from Defendants.[4] Trial Court Docket Entries at 5–7. Defendants' violations do not appear to be any more flagrant than Johnson's. The trial court did not abuse its discretion in not issuing sanctions. In addition, it was Johnson's counsel, not defense counsel, who was admonished by the trial court for failure to produce the declarations sheets for English's insurance policy showing that his coverage was limited tort, while she falsely represented that the coverage was full tort. Notes of Testimony, March 28, 2007 (3/28/07 N.T.) at 162–167.

◼ Furthermore, any error in failing to issue the requested sanctions here would have been harmless as Johnson sought a default judgment which, as stated, would not have altered the outcome.

---

4. SEPTA was ordered to answer interrogatories, produce requested documentation, and appear for a deposition on August 8, 2005. Triage Connect and Lakesha White were ordered to answer interrogatories, produce requested documentation, and have White appear for a deposition on January 24, 2006. Johnson and English were ordered to appear for depositions on June 22, 2006, and to answer interrogatories and produce requested documentation on the same day.

For the foregoing reasons, the order of the trial court is affirmed.

### COUNSEL'S CODE OF CIVILITY VIOLATIONS

■■■ It must be noted that argument on the instant appeal was duly scheduled for Tuesday, November 11, 2008, at 1:00 p.m. Defendants' counsel appeared as scheduled and waited in the courtroom for this case to be called. At approximately 12:54 p.m., however, Johnson's counsel (Counsel) faxed a letter to this Court's Prothonotary stating the following:

> Dear Sir/Madam:
>
> I am not able to travel to Philadelphia today for the oral argument scheduled in the above-referenced matter. I would respectfully therefore submit my case, on behalf of the appellant/plaintiff, on the briefs.
>
> Thank you for your consideration.

The letter was printed on firm letterhead indicating that Counsel's firm is located approximately four blocks from the designated courtroom. Counsel offered no explanation as to why he was unable to travel to Philadelphia for the scheduled argument, and no explanation as to why he waited until six minutes before argument to notify the Court. Further, we note that Counsel failed to inform opposing counsel that he would not be appearing for argument, and apparently failed to so much as provide a courtesy copy to opposing counsel of the letter Counsel faxed to the Court.

We find that Counsel's conduct in this matter has been violative of Pennsylvania's Code of Civility.[5] As noted in the preamble to Pennsylvania's Code of Civility:

The hallmark of an enlightened and effective system of justice is the adherence to standards of professional responsibility and civility. Judges and lawyers must always be mindful of the appearance of justice as well as its dispensation.... [The Code of Civility is] intended to encourage lawyers, judges and court personnel to practice civility and decorum and to *confirm the legal profession's status as an honorable and respected profession where courtesy and civility are observed as a matter of course.*

The conduct of lawyers ... should be characterized at all times by professional integrity *and personal courtesy in the fullest sense of those terms. Integrity and courtesy are indispensable to the practice of law and the orderly administration of justice by our courts.* Uncivil or obstructive conduct impedes the fundamental goal of resolving disputes in a rational, peaceful and *efficient* manner.

The [Code of Civility is] designed to encourage judges and lawyers to meet their obligations toward each other and the judicial system in general.

(Emphasis added).

Specifically, Article II of the Code of Civility provides:

> 1. *A lawyer should act in a manner consistent with the* fair, *efficient* and humane *system of justice and treat all participants in the legal process in a civil, professional and courteous manner at all times.* These principles apply to the lawyer's conduct in the courtroom, in office practice and in the course of litigation.
>
> . . . .

---

5. The Supreme Court of Pennsylvania adopted the Code of Civility by *Per Curiam* Order dated December 6, 2000, as amended by *Per Curiam* Order of the same dated April 21, 2005; 204 Pa.Code §§ 99.1–99.3.

9. *A lawyer should be punctual* and prepared for all court appearances.

10. *A lawyer should avoid ex parte communications with the court, including* the judge's staff, on pending matters in person, by telephone or *in letters and other forms of written communication* unless authorized. . . .

11. *A lawyer should be considerate of the time constraints and pressures on the court in the court's effort to administer justice and make every effort to comply with schedules set by the court.*

. . . .

14. *A lawyer should deliver to all counsel involved in a proceeding any written communication that a lawyer sends to the court. Said copies should be delivered at substantially the same time and by the same means as the written communication to the court.*

15. *A lawyer should attempt to verify the availability of necessary participants ... and promptly notify the court of any anticipated problems.*

. . . .

17. *A lawyer should demonstrate respect for other lawyers, which requires that counsel be punctual in meeting appointments with other lawyers and considerate of the schedules of other participants in the legal process. ...*

(Emphasis added).

For future reference, Counsel is instructed to be "cognizant of the standing of the legal profession" and to be more attentive to the principles outlined in the Code of Civility. *See* Code of Civility, Article II, para. 19. We hold that, in failing to comply with the Code of Civility, Counsel has done a disservice to his client, to opposing counsel, to opposing counsel's clients, to the judiciary, and to the general public, as significant resources were wast-

ed in preparation for an argument that would not take place.

## ORDER

AND NOW, this 8th day of January, 2009, the December 7, 2007 order of the Common Pleas Court of Philadelphia County is hereby AFFIRMED.