2016 PA Super 74

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

TERSAUN COLE,

Appellant

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1710 WDA 2014

Appeal from the Judgment of Sentence June 19, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002470-2011

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

OPINION BY SHOGAN, J.:                    **FILED MARCH 28, 2016**

Tersaun Cole ("Appellant") appeals the judgment of sentence imposed after a jury convicted him of first degree murder, robbery, conspiracy, and carrying a firearm without a license. Appellant challenges, *inter alia*, the admission of a member of the district attorney's staff to the jury room during deliberations and the sentence on his robbery conviction. We affirm Appellant's convictions, but vacate the judgment of sentence and remand for resentencing.

We summarize the evidence presented at trial as follows: On December 30, 2010, Appellant visited Shadena Kennedy ("Ms. Kennedy") at her apartment in Pittsburgh's Elmore Square housing project. At some point during the day, Appellant left the apartment to buy cigarettes for Ms. Kennedy. He delivered the cigarettes to Ms. Kennedy and left again,

accompanied by three men. Shortly thereafter, Ms. Kennedy heard gunshots and learned that Teante Hill ("the victim") had been shot. N.T., 3/19/13, at 34–39.

Denise Hayden ("Ms. Hayden") was returning to her Elmore Square apartment in a private cab on December 30, 2010. As the cab approached Elmore Square, Ms. Hayden observed a young man she knew as "P Murph" run across the street and up to Appellant and two other young men, all of whom were dressed in black and standing in a doorway. Ms. Hayden saw a handgun in Appellant's hand. After entering her street-level apartment, Ms. Hayden heard gunshots and ran to the courtyard. There, she saw the victim come out of a hallway and fall to his knees. She also saw Appellant with the gun in his hand run out of the hallway. N.T., 3/19/13, at 44–50. Two or three days before the shooting, Ms. Hayden observed Appellant, "P Murph," and two men she did not recognize near the fence, looking toward the courtyard at the victim. She overheard one of them say, "We didn't get him today. We'll get him tomorrow." *Id.* at 53–58, 62.

The victim's stepbrother, Edwin Peoples, and the victim's cousin, Deron Townsend, were eye-witnesses to the shooting. They both described the events leading up to and including when Appellant and a lighter-skinned man shot the victim, while a third man stood watch. N.T., 3/19/13, at 103–111, 121–130. They both identified Appellant from a photographic array as one of the shooters. *Id.* at 111, 129.

- 2 -

Pittsburgh Homicide Detective George Satler reviewed video footage captured from security cameras around Elmore Square between 3:17 p.m. and 3:19 p.m. on December 30, 2010. The videos showed three individuals exiting an apartment and walking out of sight, the victim staggering and falling to the ground, and the same three individuals running away and fleeing in a vehicle. The cameras did not capture the actual shooting. N.T., 3/19/13, at 74–87, Commonwealth Exhibits 6 and 7 (videos).

On January 3, 2011, the Allegheny County District Attorney filed a criminal information, charging Appellant with the above-stated crimes. During the early morning hours of January 23, 2011, Pittsburgh Police Officer Jeffrey Tomer initiated a traffic stop on Pittsburgh's North Side. Appellant was a passenger in the back seat of the vehicle. Once the vehicle stopped, Appellant fled on foot. Officer Tomer apprehended Appellant, arrested him, and found two identification cards on him, one with Appellant's name and one for a "Jaison Houser." Appellant informed the officer that he was Jason Houser and that Cole was his cousin. N.T., 3/19/13, at 143–148, Commonwealth Exhibits 20 and 21.

Appellant proceeded to trial on March 19, 2013. During its deliberations, the jury asked to view the surveillance video. N.T., 3/20/13, at 88. The trial court allowed Corey Day, a technical analyst from the district attorney's office, accompanied by a tipstaff, access to the jury room to play the video. The analyst and tipstaff then left without saying anything

to the jury. *Id.* at 96–97; N.T. Status Hearing, 3/27/15, at 10–15. The jury convicted Appellant of the above-stated crimes on March 20, 2013. N.T., 3/20/13, at 98. On June 19, 2013, the trial court sentenced Appellant to incarceration for life without the possibility of parole on the murder conviction, a consecutive sentence of incarceration for five to ten years on the robbery conviction pursuant to 42 Pa.C.S. § 9712, ten to twenty years of incarceration on the conspiracy-to-commit-homicide conviction, and no further penalty on the conviction for carrying a firearm without a license. N.T., 6/19/13, at 6–7.

After a change of counsel, Appellant filed post-sentence motions on July 1, 2013, which were denied by operation of law. This appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our consideration:

I.   Whether Appellant's Pennsylvania and United States constitutional rights were violated by the allowance of an employee of the prosecutor's office in the jury room to display video footage during deliberations?

II.  Whether trial court erred by allowing Detective [Satler] to narrate a video played during the Commonwealth's case, and entered in evidence in this trial?

III. Whether the trial court erred by applying a mandatory sentence when sentencing Appellant at count two (2), 18 Pa.C.S. 3701 (A)(1)(I), robbery?

Appellant's Brief at 5 (full capitalization omitted; reordered for disposition).

Appellant first contends that his constitutional rights to a fair trial and to counsel were violated when the trial court allowed an employee of the

- 4 -

district attorney's office to enter the jury room during deliberations to display video evidence. Appellant's Brief at 23. Appellant submits, "The Pennsylvania Supreme Court has held that if [a] juror has contact with a party, a lawyer, court officer, or a judge, then, upon a showing that the contact created a reasonable likelihood of prejudice, a new trial is warranted." *Id.* (citing *Commonwealth v. Bradley*, 459 A.2d 733 (Pa. 1983)).

> The trial court disposed of this issue as follows:
>
> This [c]ourt heard testimony on this matter on March 27, 2015, and incorporated the transcript into the record. From the testimony, it is clear that Corey Day, at that time a paralegal and communications coordinator in the Office of the District Attorney, with the consent of counsel for Appellant, entered the jury room with this [c]ourt's tipstaff, and played the relevant section of video several times without making any substantive comments to the jury about it or the case. Under these circumstances, Appellant suffered no prejudice and his claim for relief is without merit.

Trial Court Opinion, 5/15/15, at 10 (internal citations omitted).

Initially, we note that Appellant has waived this issue for failure to properly object during trial. N.T., 3/20/15, at 88. *See Commonwealth v. Baumhammers*, 960 A.2d 59, 84 (Pa. 2008) ("[T]he absence of a specific contemporaneous objection renders the appellant's claim waived."). However, even if this issue were not waived, *Bradley*, upon which Appellant relies, is distinguishable.

Therein, the trial court recorded its *ex parte* communication to the jury:

> Let the record show that the court officer received the following inquiry from the jury during their deliberations, "May we see or hear the hospital report on Nina Rothschild." Upon being advised of this memorandum, the court advised the court officer to instruct the jury that the hospital report had been put in by stipulation, and to continue their deliberations.

*Bradley*, 459 A.2d at 734 (citing Record at 271a). After the trial court denied Bradley's post-verdict motions, he appealed his convictions for rape, robbery, and involuntary deviate sexual intercourse.

Relying on Pennsylvania civil cases, the Superior Court vacated the judgment of sentence and granted a new trial, having concluded that all *ex parte* communications between the court and jury require a new trial. *Commonwealth v. Bradley*, 415 A.2d 1243, 1245 (Pa. Super. 1979). The Commonwealth petitioned for allowance of appeal. The Supreme Court reversed the Superior Court, "disapproving of the broad language in our civil cases requiring reversal without prejudice, and [held] that only those *ex parte* communications between a court and jury which are likely to prejudice a party will require reversal." *Bradley*, 459 A.2d at 734.

In contrast, the case before us does not involve an *ex parte* communication between the judge and the jury but a procedure for showing video evidence to the jury during deliberations.[1] Moreover, defense counsel consented to allowing the analyst to enter the jury room during

---

[1] Arguably, a preferable procedure would be to bring the jury back into the courtroom to view the video.

- 6 -

deliberations. N.T. Trial, 3/20/13, at 88–90; N.T. Hearing Status, 3/27/15, at 5, 14–15, 20–21. Furthermore, Appellant's claim is speculative. Appellant made no proffer as to a reasonable likelihood of prejudice, nor could he in light of the uncontested testimony by the analyst that he did not communicate with the jury. N.T., Hearing Status, 3/27/15, at 13–21. **Accord Commonwealth v. Sneed**, 45 A.3d 1096, 1115 (Pa. 2012) ("An extraneous influence may compromise the impartiality and integrity of the jury, raising the specter of prejudice. The relevant inquiry is whether the extraneous influence caused 'a reasonable likelihood of prejudice.'"). Thus, Appellant would not be entitled to relief on this issue.

Next, Appellant argues that the trial court erred by permitting Detective Satler to narrate while the security camera video was played for the jury. Appellant's Brief at 32. The admission of videotaped evidence is always within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. **Commonwealth v. Stark**, 526 A.2d 383 (Pa. Super. 1987). "Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." **Commonwealth v. Drumheller**, 808 A.2d 893, 904 (Pa. 2002) (quoting **Commonwealth v. Stallworth**, 781 A.2d 110, 117–118 (Pa. 2001)).

Appellant argues that Detective Satler's narration of the video was inadmissible on three grounds: it was based on speculation rather than personal knowledge, Appellant's Brief at 32 (citing Pa.R.E. 602);[2] it contained improper lay opinion, Appellant's Brief at 34 (citing Pa.R.E. 701);[3] and the danger of unfair prejudice to Appellant outweighed the probative value of the narration. Appellant's Brief at 36 (citing Pa.R.E. 403).[4]

The trial court rejected Appellant's assertions as follows:

> At TT [trial transcript] 79, Appellant's counsel objected, stating "I'm going to object. My understanding is the Commonwealth is going to enter the video into evidence. So it would be the jury's interpretation and not the detective's." (TT 79) This [c]ourt overruled, and permitted the detective to

_____

[2] Pa.R.E. 602 provides, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."

[3] Pa.R.E. 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

[4] Pa.R.E. 403 provides, "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

describe his observations. The witness testified that he saw a vehicle drive around and back into a parking space. This statement, describing what the video portrays, is not speculative, or unfairly prejudicial, and does not contain improper lay opinion. The statement merely puts into words what the video portrays. As such, its admission was not improper.

* * *

At TT 84, counsel objected to narration. This [c]ourt overruled, stating that the witness was familiar with the area as he has been physically present in the area and was able to describe for the jury where items were in relationship to the events which occurred. The witness testified that he saw one individual running along a fence and another individual on the ground in a kneeling position. He did not speculate or provide opinion regarding his observations. His testimony is also not unduly prejudicial, as the jury was watching the same events unfold as the witness testified.

Finally, as it pertains to this issue, counsel objects at TT 86 to the witness describing what he observed at a certain point in the video. This [c]ourt again overruled, stating that the witness wasn't explaining to the jury everything he takes from the video. He was merely pointing out, based on his knowledge of the area and of the incident, where the jury should focus its attention. As the video had been admitted into evidence and the jurors had the opportunity to review it for themselves, it was not error for this Court to admit the testimony of the witness.

Trial Court Opinion, 5/15/15, at 9–10. We agree with the trial court.

The record reveals that Detective Satler had been a Pittsburgh homicide detective for fourteen years and that he was assigned on December 31, 2010, to recover "video that might have been captured for this incident." N.T., 3/19/13, at 75. He was at Elmore Square reviewing video footage for six hours. *Id.* at 77. Detective Satler recovered video footage from two camera angles that captured where the shooting occurred.

*Id.* at 78. During the course of his narration, Detective Satler pointed out the time stamp at various points in the video; he described the location of the cameras to the scene, the physical relationships between people and buildings, and the movements of a vehicle; he identified three men leaving an apartment and running along the fence line and the victim staggering and falling down. *Id.* at 80–90. Using measurements he and his colleague took, the video footage, and the time stamps, Detective Satler calculated the direction, distance, and time covered by the three individuals. *Id.* at 90–91.

Upon review, we conclude that admission of Detective Satler's narration did not violate our rules of evidence. Detective Satler's testimony was based on his experience, his perceptions, and his personal knowledge of Elmore Square. His testimony was relevant to the jury's understanding of the timing, the actors, and the location of events depicted in the video. Moreover, his testimony did not cause unfair prejudice or undue delay, confuse the issues, mislead the jury, or needlessly present cumulative evidence. Thus, we discern no abuse of the trial court's discretion in admitting Detective Satler's testimony. Appellant's contrary claim lacks merit.

Lastly, Appellant challenges his sentence as illegal, alleging the trial court imposed an unconstitutional mandatory minimum sentence on the robbery conviction. Appellant's Brief at 21. The trial court and the

Commonwealth concede that Appellant is entitled to resentencing. Trial Court Opinion, 5/15/15, at 10–11; Commonwealth's Brief at 8.

This Court recently held in **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014), that 42 Pa.C.S. § 9712 is unconstitutional under **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013). Appellant's June 19, 2013 sentence was imposed two days after **Alleyne** was decided. Therefore, we are constrained to vacate the judgment of sentence and remand for resentencing on the robbery conviction. **Valentine**, 101 A.3d at 812.

Judgment of sentence vacated; case remanded for resentencing.

Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2016