J-A14031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON HARPER, | : | |
| | : | |
| Appellant | : | No. 918 WDA 2018 |

Appeal from the Judgment of Sentence Entered May 24, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011623-2017

BEFORE: OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED AUGUST 30, 2019**

Aaron Harper ("Harper") appeals from the judgment of sentence entered following his conviction of theft by unlawful taking and person not to possess a firearm.[1] We affirm.

In its Opinion, the trial court summarized the procedural history and facts underlying the instant appeal, which we adopt as though fully restated herein. *See* Trial Court Opinion, 12/6/18, at 1-2 (procedural history), 3-4 (factual history).

Harper presents the following claim for our review:

Whether the evidence is insufficient to support [] Harper's conviction[s,] when [] Harper was not identified as the perpetrator of the crimes charged beyond a reasonable doubt, or, in the alternative, when the Commonwealth failed to prove that any firearm depicted in the surveillance video belonged to the complainant in this case?

---

[1] 18 Pa.C.S.A. §§ 3921(a), 6105(a)(1).

Brief for Appellant at 5.

Harper claims that the evidence is not sufficient to sustain his convictions. *Id.* at 11. Specifically, Harper challenges the identification of him as the perpetrator of the offenses. *Id.* at 15. According to Harper, "[t]he Commonwealth presented only one witness to the theft: the complainant, [Justin] Hoover [("Hoover")]." *Id.* Harper posits that Hoover "had little opportunity to view the perpetrator of the theft[,] at the time it occurred." *Id.* Harper asserts that Hoover did not see the perpetrator until after the perpetrator was fleeing from the scene. *Id.* at 16. Harper directs our attention to discrepancies between Hoover's testimony at the preliminary hearing and at trial, arguing that Hoover's identification was too unreliable to sustain Harper's conviction. *Id.* Harper further argues that Hoover's prior identification of Harper as his assailant, at the preliminary hearing, was inaccurate, "calling into question the reliability of [Hoover's] identification at the scene and at trial." *Id.* at 17. Harper points out that, at the preliminary hearing, Hoover testified that his assailant did not wear flip-flops, but at trial, he claimed that the assailant wore flip-flops, and that Hoover became combative when challenged about the discrepancy. *Id.* Harper further argues that he has no "highly identifiable" characteristics, and that "myriads of people" could fit Hoover's description of his assailant as a "black male wearing a blue shirt." *Id.*

Harper challenges the sufficiency of the evidence underlying his convictions. In reviewing a challenge to the sufficiency of the evidence,

> [t]he standard we apply … is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder[,] unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fabian*, 60 A.3d 146, 150-51 (Pa. Super. 2013) (citation omitted). "This standard of deference is not altered in cases involving a bench trial, because the province of a trial judge sitting without a jury is to do what a jury is required to do." *Commonwealth v. Lee*, 956 A.2d 1024, 1027 (Pa. Super. 2008) (internal quotation marks and citation omitted).

Section 3921(a) of the Crimes Code provides that "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

Section 6105(a)(1) provides as follows:

A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

In its Opinion, the trial court summarized the evidence in a light most favorable to the Commonwealth, as verdict winner, and concluded that it is sufficient to establish the identity of Harper as the perpetrator. **See** Trial Court Opinion, 12/6/18, at 3-4. We agree with and adopt the reasoning of the trial court, as set forth in its Opinion, **see id.**, with the following addendum.

Harper compares the evidence in this case to cases in which Pennsylvania courts have concluded that the evidence was not sufficient to establish the identity of the perpetrator. **See** Brief for Appellant at 12 (directing this Court's attention to **Commonwealth v. Crews**, 260 A.2d 771 (Pa. 1970), and **Commonwealth v. Wiley**, 432 A.2d 220 (Pa. Super. 1981)). Harper's reliance on these cases is misplaced.

In **Crews**, two black males were seen entering a cab; the cab driver was robbed and beaten, and two black men were seen fleeing the scene. **Crews**, 260 A.2d at 772.

A witness, Mrs. Schorr, who observed the two men fleeing from the cab, testified that the taller, lighter[-]complexioned one was wearing a gold-colored sweater, while the shorter, darker one was wearing a black leather trench coat. When [Crews's co-defendant] was arrested, he was wearing a black leather coat[,]

which Mrs. Schorr identified at trial as being the coat she saw. A gold[-]colored sweater was found in Crews'[s] home. Mrs. Schorr could not positively say that it was the same sweater[,] which the taller felon was wearing, but did indicate that the color appeared to be the same.

*Id.* The Commonwealth additionally presented testimony that Crews and his co-defendant were seen together 1½ hours before the crime. *Id.* Our Supreme Court held that the evidence was insufficient to sustain Crews's conviction of murder:

As stated above, the Commonwealth's sole identification evidence was based on similar height and coloration, plus the clothing. In light of the myriads of people who fit the height and coloration description, and in light of the commonness of a gold sweater and a black trench coat, the evidence failed to point with sufficient certitude to Crews as the perpetrator of the crime. The jury was forced to guess whether it was Crews or another light-complexioned Negro male wearing a gold sweater who committed the crime. Our system recoils at sending a man to prison for the rest of his life on a guess….

*Id.*

In *Wiley*, a witness stated that he had identified the defendant because "it looked like" the perpetrator. *Wiley*, 432 A.2d at 221. The witness, when asked on cross-examination, "[H]ow positive are you in your identification?" responded, "Not too sure[,]" and later stated that he was "50 percent" unsure of his identification of the defendant, and then, "[i]t's somewhere—[i]t's about 70 percent" certain. *Id.* at 222-23. No such equivocation exists in the instant case.

At trial, the victim, Hoover, stated that on August 21, 2017, at around 3:00 p.m., he stopped near Second Avenue and Winston Street, in Hazelwood,

Pennsylvania. *See* N.T., 5/24/18, at 8-9. Hoover testified that he removed his holster, with a firearm inside of it, and placed it on the wall in front of him, in order to adjust his basketball shorts. *Id.* at 9-10. According to Hoover, he heard someone running behind him, turned, and saw Harper running away with Hoover's firearm. *Id.* at 10-11. Hoover chased Harper "up to the point where I heard him rack a bullet into the chamber[,] and I fell back and called the police." *Id.* at 12.

Hoover's identification was not uncertain or equivocal. The trial court, as fact-finder, was free to resolve any inconsistencies or discrepancies in the testimony in either party's favor. *See generally Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (explaining that "[t]he Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the [fact-finder], which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence"). Consequently, we cannot grant Harper relief on this claim.

Harper also argues that, "the fact that [he] was running on the surveillance video, and that he ran when [a police officer] initially attempted to stop him," is not sufficient to sustain his conviction of person not to possess a firearm. Brief for Appellant at 20. Harper asserts that the 11-second surveillance video does not clearly depict him as carrying a firearm. *Id.* At best, Harper asserts, the video established that he was running with a black object in his hand. *Id.* at 21.

Harper's challenge to the video surveillance footage does not afford him relief. Hoover testified that Harper stole his firearm from the wall and carried the weapon as he fled the scene. N.T., 5/24/18, at 10-11. This evidence, which the trial court found to be credible, was sufficient to establish that Harper, a felon, possessed a firearm.

Counsel's Application to Withdraw is granted.[2] Judgment of sentence affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2019

---

[2] Appellate counsel has filed an Application to Withdraw, as she has resigned from the Allegheny County Office of the Public Defender.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,

CC NO.: 2017-011623
Superior Court No: 918 WDA 2018

v.

AARON HARPER,
                    Defendant.

OPINION

FLAHERTY, J.                                                December 6, 2018

Aaron Harper ("Defendant") appeals from the Judgment of Sentence imposed by this

Court on May 24, 2018.

On August 21, 2017, Defendant was charged with the following offenses for an incident

that occurred on that date:

- Count One: Receiving Stolen Property (18 Pa.C.S.A. §3925(a), a felony of the first degree)
- Count Two: Theft by Unlawful Taking—Movable Property (18 Pa.C.S.A. §3921(a), a felony of the second degree)
- Count Three: Person not to Possess a Firearm (18 Pa.C.S.A. §6105(a)(1), a felony of the second degree)
- Count Four: Carrying a Firearm without a License (18 Pa.C.S.A. §6106(a)(1), a felony of the third degree)
- Count Five: Escape (18 Pa.C.S.A. §5121(a), a misdemeanor of the second degree)

The matter proceeded to a nonjury trial on May 24, 2018. Prior to the start of trial, the

Commonwealth moved to amend Count 1, receiving stolen property, from a felony of the first

degree to a felony of the second degree, and Count 3, person not to possess a firearm, from a

felony of the second degree to a misdemeanor of the first degree. This Court accepted the

1

amendments and amended the information. At the conclusion of the trial, Defendant was found guilty of theft by unlawful taking and person not to possess a firearm and not guilty at the remaining counts. Defendant waived his right to a pre-sentence report and the Defendant was sentenced to serve twenty-four (24) months of probation for theft by unlawful taking.

Defendant timely filed his Notice of Appeal on June 22, 2018. Defendant was directed to file his concise statement of matters complained of on appeal via order dated June 26, 2018. Defendant's concise statement was filed on September 24, 2018, wherein he raised the following issues:

1. The evidence was insufficient to convict Defendant of theft by unlawful taking and person not to possess a firearm because the Commonwealth did not prove, beyond a reasonable doubt, that Defendant was the individual who unlawfully took the complainant's firearm.

2. The evidence was also insufficient to convict Defendant of theft by unlawful taking because the Commonwealth did not prove beyond a reasonable doubt that the firearm Defendant carried did, in fact, belong to the complainant in this case. To the extent that there was proof that Defendant carried a firearm, there was insufficient evidence that it was the stolen firearm in question.

3. Defendant is entitled to a new trial because this Honorable Court erred in allowing Officer Carl Yeaney ("Officer Yeaney") to present inadmissible opinion testimony as to the contents of a surveillance video. Officer Yeaney testified, based on his training and experience, that he believed the surveillance video showed Defendant holding a firearm. Officer Yeaney had not been qualified as an expert, and his opinion testimony did not fall within the permissible bounds of lay opinion testimony under the Rules of Evidence. Admission of this testimony was reversible error.

4. Defendant is entitled to a new trial because this Honorable Court erred in allowing Officer Yeaney to testify to the contents of the surveillance video, in violation of the Best Evidence Rule.

2

The facts as found by this Court at trial are as follows: Justin Hoover ("Hoover") credibly testified that he was on Winston Avenue and Second Avenue in Hazelwood walking to see his grandfather on August 21, 2017. (T.T. pp. 8-9). He was walking toward St. Stephen's Church around 3:00 p.m. (T.T. p. 9). On that day he was carrying a firearm and wearing basketball shorts. (T.T. p. 10). Around that time, Hoover had to adjust his basketball shorts, so he removed his firearm from his person and set it down on a wall in front of him. (T.T. p. 10). At that point, he heard someone run up behind him, grab his firearm off of the wall, and take off running down the street. (T.T. pp. 10-11). Hoover identified the individual who took his firearm from the wall as Defendant. (T.T. p. 11). Hoover had never met Defendant before this incident. (T.T. p. 12). He chased Defendant on foot until he heard Defendant rack a bullet into the chamber of the firearm. (T.T. p. 12). At this point, Hoover stopped chasing Defendant and contacted the police. (T.T. p. 12). Hoover then observed Defendant continue running down the street toward Halbleib's Auto Body. (T.T. p. 12) Hoover further testified that the firearm was operational, as he had fired it approximately one week before it was stolen. (T.T. p. 11).

Officer Yeaney, a police officer for the City of Pittsburgh Police Department and assigned to Zone 4, testified that he was on general patrol on August 21, 2017 when he received a call at approximately 3:15 p.m. (T.T. p. 18). He responded to the area of Second Avenue and Winston Street for a theft of a firearm. (T.T. p. 18). Upon arrival, he made contact with the complainant, Justin Hoover, who stated that a "black male wearing a blue shirt" had stolen his firearm and fled on foot toward Halbeib's Auto Body. (T.T. p. 18). Officer Yeaney notified other units in the area of the description and began to patrol the area. (T.T. p. 18). He shortly noticed a male fitting that description walking a few blocks ahead of him. (T.T. p. 19). Officer Yeaney approached him, and called out over the radio attempting to initiate a stop. (T.T. p. 19).

3

When Defendant saw the activated police lights, he began to run away. (T.T. p. 19). Officer Yeaney pursued him, had other officers set a perimeter, and ultimately located Defendant in between buildings on the 5100 block of West Langhorn Street. (T.T. p. 19). There was no firearm recovered from Defendant or at any point during this investigation. (T.T. p. 25).

Video surveillance from Halbeib's Auto Body from August 21, 2017 at 3:08 p.m. was secured by the Pittsburgh Police and played at trial. (T.T. pp. 20-22). The video captured images from the area around Halbeib's Auto Body, and depicted Defendant running down the same route as testified to by Hoover and Officer Yeaney. (T.T. p. 20-22).

Defendant's first issue on appeal is that the Commonwealth failed to prove beyond a reasonable doubt that Defendant was the individual who unlawfully took Hoover's firearm. At trial in this matter, Hoover identified Defendant as the individual who took his firearm off of the wall without authorization or permission to do so. (T.T. p. 11). This Court found Hoover's testimony to be credible in all respects. In-court identification of the perpetrator of a crime is sufficient evidence to prove that a particular defendant committed the offense charged. *See, Commonwealth v. Jarecki*, 415 Pa.Super. 286, 290 (1992). As such, there was sufficient evidence to prove Defendant was the individual who committed these offenses.

Defendant's second issue on appeal is that the evidence was insufficient to convict Defendant of theft by unlawful taking because the Commonwealth did not prove beyond a reasonable doubt that the firearm Defendant carried belonged to Hoover. A person commits the offense of theft by unlawful taking or disposition of movable property when he "unlawfully takes...movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. §3921(a). Hoover testified that he had lawfully purchased the Bersa 9 millimeter pistol he was carrying on

4

August 21, 2017 approximately eight months prior to this incident. (T.T. p. 11). He further testified that he had the paperwork establishing his ownership of the firearm with him in court, although it was not admitted into evidence. (T.T. p. 13). Hoover's testimony that he lawfully purchased the firearm is sufficient evidence to establish beyond a reasonable doubt that he was the lawful owner and possessor of the firearm that was taken from him on August 21, 2017.

Defendant's third and fourth issues on appeal involve Officer Yeaney's testimony concerning the surveillance video that was admitted into evidence. Defendant alleges that Officer Yeaney's testimony was improper lay opinion testimony when he testified, "I would state that based on my training and experience, having handled firearms, I can clearly state that I believe what he is handling in his pants is a firearm." (T.T. p. 24). Further, Defendant alleges that Officer Yeaney's testimony regarding his observations on the video tape constitute a violation of the best evidence rule.

Initially, this Court notes that the best evidence rule is not violated in this matter, as it does not apply. The best evidence rule is set forth in Pennsylvania Rule of Evidence 1002, which states, "an original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. The best evidence rule, while it was initially intended solely for writings, has been extended through case law to include video tape footage. *Commonwealth v. Green*, 162 A.3d 509, 517-18 (Pa. Super. 2017). However, the rule is designed to prevent testimony about a video without actually admitting the original video footage. *Id.* (emphasis added). In this instance, the video footage was admitted into evidence and reviewed prior to Officer Yeaney's testimony. As such, the best evidence rule does not apply.

5

Officer Yeaney's testimony concerning his personal observations does not violate of the rules of evidence. The Pennsylvania Superior Court addressed the same issue in *Commonwealth v. Cole*, 135 A.3d 191 (Pa. Super. 2016). In *Cole*, a City of Pittsburgh homicide detective narrated surveillance video footage during his testimony. *Commonwealth v. Cole*, 135, A.3d at 194. The Superior Court found this to be permissible, as the video was simultaneously being played to the jury, who could review it and make their own determination as to the contents thereof. *Id.* The video was presented in the same fashion in this matter. As such, Officer Yeaney's testimony is permissible.

For the foregoing reasons, this Court's May 24, 2018 Order of Sentence should be affirmed.

BY THE COURT,

Thomas E. Flaherty, Judge
Court of Common Pleas

6