J-S20021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                        :           PENNSYLVANIA
                                        :
            v.                         :
                                        :
JEYDIUS ISAIAH ESPADA           :
                                        :
          Appellant          :     No. 999 MDA 2023

Appeal from the PCRA Order Entered June 29, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003866-2018

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:           **FILED: JULY 2, 2024**

Jeydius Isaiah Espada appeals from the order denying his first timely petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–46.  We affirm.

In January 2020, a jury convicted Espada of third-degree murder and related charges.   This Court previously adopted the trial court's detailed statement of facts as follows:

> At approximately 1 a.m. on May 6, 2018, [Espada] and Jose Almodovar ("Savage") drove Indanesia Wright ("April") to an after-hours party[.] [Espada] and Savage did not remain at the party.  April was the girlfriend of Damian Hosking ("Victim").  Victim was not present at the party when April arrived, but arrived later.  Earlier in the day, Victim and April had an argument and ignored each other at the party.  April invited Savage to come

---

[*] Former Justice specially assigned to the Superior Court.

back to the party by text because Victim was flirting with other girls. April went outside to wait for Savage to arrive.

[Espada] and Savage arrived at the party in a Ford Expedition a few minutes after April's text. The party was held in a private home with an entrance hallway separating the first-floor apartment and the steps leading to the upstairs apartment. Savage entered the hallway and was patted down by a doorman for weapons. The doorman found no weapon on Savage. [Espada] stayed at the front door and was not searched for weapons.

Victim who was in the entrance hallway yelled to Savage that he could not come into the party. Savage said OK and began to walk away, and as he did, Victim started a verbal altercation with Savage. April testified that she could not hear what was being said because the noise level was very loud with more than 70 people in the small first-floor apartment of a city row home with music playing. Victim threw either a drink or a bottle near Savage and [Espada] as they were departing. Savage claimed it was a bottle of Corona, and it hit [Espada]. At this point, other girls at the party dragged April into the apartment so that she only heard a lot of yelling and screaming and then heard gunshots.

Savage testified that [Espada] yelled to Victim to come outside and cocked a handgun back. Savage exited the party and ran to the right, Savage said he turned around and saw [Espada] with the gun, saw a muzzle flash, and heard a single gunshot and as he continued to run, he heard another gunshot. Savage returned home in the Ford Expedition. Both Savage and his half-brother, Jerel Guzman ("Jerel") testified that Savage told Jerel what had transpired at the party and that [Espada] shot Victim. After the gunshots, April testified that she came out of the apartment and saw Victim laying there and she accompanied him to the hospital where he died.

Jerel testified that he read on Facebook and in a newspaper article that Victim died. After reading about the homicide, Jerel called Crime Alert and informed them that his brother, Savage, and [Espada] were involved in the incident. On May 8, 2018, days after the shooting, Jerel spoke to [Espada] on the phone to find out where the firearm was located. Jerel testified that he pretended that he was assisting [Espada] and did not want [Espada] to know that he was co-operating with the police. Jerel found the firearm with [Espada's] assistance, and [Espada],

Savage, and Jerel met at a property in Hamburg, Berks County, Pennsylvania to break apart the firearm, a .40 caliber semi-automatic handgun, wipe the parts with bleach and hide them. Later, Jerel asked [Espada] to tell him what happened that night at the party. [Espada] told Jerel basically the same story that Savage told him. In addition, [Espada] told [Jerel] that he shot Victim to protect Savage and would do it again if necessary.

On May 9, 2020, Jerel learned that [Espada] was planning to go to Florida, so Jerel called Detective [Daniel] Cedeno of the Reading Police to express his concern that [Espada] would leave before police could come to the Hamburg property. Reading police assembled a team and went to the Hamburg property. A female allowed police to enter and they found Jerel and Savage in the living room and found [Espada] hiding behind a counter in the kitchen. [Espada] was taken into police custody.

*See Commonwealth v. Espada*, 241 A.3d 375 (Pa. Super. 2020) (non-precedential decision) (adopting Trial Court Opinion, 5/22/20, at 5-13) (formatting altered; citations omitted),

In addition to live testimony, the Commonwealth presented a series of videos from surveillance cameras taken from city cameras and individual homes around the time of the shooting. While these videos played for the jury, Detective Daniel Cedeno provided testimony regarding his perception of their content.

Following his convictions, the trial court, on March 3, 2020, sentenced Espada to an aggregate term of 17¼ to 34½ years of imprisonment. The trial court denied Espada's timely post-sentence motion. Espada appealed to this Court, where he challenged the sufficiency and weight of the evidence supporting his convictions. Finding no merit to these claims, we affirmed his judgment of sentence on October 7, 2020. *Espada*, *supra*.

- 3 -

On November 8, 2021, Espada filed the counseled PCRA petition at issue. The Commonwealth filed a response. On September 20, 2022, the PCRA court entered issued a Pa.R.A.P. 907 notice of its intent to dismiss Espada's petition without a hearing. Espada did not file a response. By order entered June 27, 2023, the PCRA court denied Espada's petition. This appeal followed. Both Espada and the PCRA court have complied with Pa.R.A.P. 1925.

Espada raises the following issue on appeal:

A. The PCRA Court erred in denying [Espada's] claim that trial counsel was ineffective for failing to object to the detective's narration of the videos played before the jury. The underlying claim has merit because the detective's narration violated [Pa.R.E.] 602 and 701.

Espada's Brief at 5.

This Court's standard of review for an order denying a PCRA petition calls for us to "determine whether the ruling of the PCRA court is supported by the evidence and free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Webb*, 236 A.3d 1170, 1176 (Pa. Super. 2020) (citing *Commonwealth v. Barndt*, 74 A.3d 185, 191–92 (Pa. Super. 2013)).

Espada's issue raises a claim regarding the alleged ineffectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken

place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009).

"Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.*

The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

> The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

In support of his claim on appeal, Espada asserts that trial counsel was ineffective for failing to object to Detective Cedeno's narration of the videos

- 5 -

played to the jury. According to Espada, Detective Cedeno's identification of the individuals in the video impeded the jury's recollection of the evidence and usurped the jury's role as [finder] of fact." Espada's Brief at 12.

Espada acknowledges that demonstrative evidence such as videos, "have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict." Espada's Brief at 16. However, "[u]nder Rules 402 and 403 of the Pennsylvania Rules of Evidence, a video, or testimony accompanying that video, can be excluded because it is not relevant or its relevancy is outweighed by unfair prejudice." *Id.* Espada further asserts that a "witness testifying as a lay witness may offer opinion testimony, but the testimony is 'limited to those opinions or inferences which are rationally based on the perception of the witness' and the witness must have personal knowledge of that which he is testifying." *Id.*, at 16-17 (citing Pa.R.E. 602, 701). Given these evidentiary rules, Espada contends that Detective Cedeno improperly offered lay opinion testimony to the jury.

Espada's claim involves the failure to object to the admission of evidence. To prove ineffectiveness, the underlying evidentiary claim must have merit. Evidentiary challenges are subject to reversal only if the trial court abused its discretion. *Commonwealth v. Hernandez*, 230 A.3d 480, 489 (Pa. Super. 2020) (citation omitted). An abuse of discretion is "not merely an error of judgment, but is rather the overriding or misapplication of the law,

or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Antidormi***, 84 A.3d 736, 749 (Pa. Super. 2014) (citation omitted).

Pennsylvania Rule of Evidence 701 reads as follows:

**Rule 701.  Opinion Testimony by Lay Witnesses**

   If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

   (a)    rationally based on the witness's perception;

   (b)    helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

   (c)    not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

In ***Commonwealth v. Cole***, 135 A.3d 191 (Pa. Super. 2016), a police detective narrated video footage from security cameras that "showed three individuals leave an apartment and walk out of sight, the victim staggering and falling to the ground, and the same three individuals running away and fleeing in a vehicle." ***Id.*** at 192.  This Court explained the circumstances and content of the detective's testimony as follows:

> The record reveals that Detective Satler had been a Pittsburgh homicide detective for fourteen years and that he was assigned on December 31, 2010, to recover "video that might have been captured for this incident."  He was [in the neighborhood] reviewing video footage for six hours.  Detective Satler recovered video footage from two camera angles that captured where the shooting occurred.  During the course of his narration, Detective Satler pointed out the time stamp at various

points in the video; he described the location of the cameras to the scene, the physical relationships between people and buildings, and the movements of a vehicle; he identified three men leaving an apartment and running along the fence line and the victim staggering and falling down.

*Id.* at 196 (citations to record omitted).

Given the above, we concluded that the admission of Detective Satler's narration did not violate the Pennsylvania Rules of Evidence:

Detective Satler's testimony was based on his experience, his perceptions, and his personal knowledge of [the neighborhood]. His testimony was relevant to the jury's understanding of the timing, the actors, and the location of events depicted in the video. Moreover, his testimony did not cause unfair prejudice or undue delay, confuse the issues, mislead the jury, or needlessly present cumulative evidence.

*Id.*

Here, the PCRA court compared the narrative at issue to the narrative found admissible in *Cole*, and reached the same conclusion:

As with the [Detective Satler] in *Cole*, in this case, Detective Cedeno's testimony was based on his personal knowledge from the investigation and was being used to direct the jury's attention to relevant portions of the videos and to explain the various angles and depictions, which were relevant to the jury's understanding of timing, actors, and location of events depicted in the video, and similarly did not cause unfair prejudice or undue delay, confuse the issues, mislead the jury or needlessly present cumulative evidence. [W]e determineG4

[Espada's ineffectiveness claim] to be meritless and further inquiry would serve no purpose.

PCRA Court Opinion, 9/19/22, at 4 (quotation marks and brackets omitted).

Our review of the record supports the PCRA court's conclusions. Espada's attempt to distinguish **Cole** is unavailing. Espada claims "Detective Cedeno's testimony was not a mere explanation; rather it was a prejudicial presentation that included a narration designed to persuade [the jury] that the sounds they were hearing and the images they were seeing matched up to the Commonwealth's theory of the case and supported Commonwealth witnesses." Espada's Brief at 19-20. Espada contends "Detective Cedeno was literally asked to offer his opinion on the evidentiary value of the video." **Id.** at 20.

Our review of Detective Cedeno's testimony during the playing of the video footage refutes Espada's claims. Detective Cedeno expressed no opinions during his testimony. **Compare**, **Commonwealth v. Merringer**, 309 A.3d 1026 (Pa. Super. 2023) (non-precedential decision) (concluding that the trial court improperly found detective's statements regarding "signs of deception" he observed in video of defendant's interview were permissible lay testimony).

Here, as in **Cole**, **supra**, Detective Cedeno provided testimony regarding the time of the relevant portions of the videos, the location of the surveillance camera in relation to the home where the shooting occurred, the identity and movement of people in some of the videos, sounds heard in one video, and the movement of relevant vehicles. Prior to Detective Cedeno's testimony, Savage already identified himself and Espada in a screen shot taken from one of the videos. N.T., 1/13 -1/16/20, at 148. As to the sounds

heard, Espada, during his own testimony, referred to the pertinent video to corroborate his testimony regarding a bottle hitting the floor. *Id.* at 374.

Moreover, regarding Detective Cedeno's identifying both the images and sounds heard on the videos, we note that the jury also saw and heard these items and had the ability to reach its own conclusions regarding them. *See Commonwealth v. Palmer*, 192 A.3d 85, 101 (Pa. Super. 2018) (explaining that the "jury itself watched the videos, and was free to reach a different conclusion").

Finally, we note the jury submitted several questions regarding the timestamps for the video footage and several videos were replayed for the jury to consider further. Thus, we are not persuaded Detective Cedeno's narration testimony improperly invaded the jury's fact-finding function. Because his underlying evidentiary claim is meritless, counsel was not ineffective for failing to object to Detective Cedeno's narration of the videos.

In sum, because Espada's sole claim of trial counsel's ineffectiveness has no merit, the PCRA court properly denied his PCRA petition. We therefore affirm the court's order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>07/02/2024</u>